UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
CITY OF MIDDLETOWN, et al.,                      :
                                                 :
                      Plaintiffs,                :
                                                 :
        -against-                                :          Civil No. 07-6572 (CLB)
                                                 :
PENCOR MASADA OXYNOL, LLC,                        :
                                                 :
                      Defendant.                 :
-------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND
TO STATE COURT AND TO STRIKE THE DECLARATION OF NICHOLAS A.
PASCALE, ESQ. IN OPPOSITION TO PETITION**

Table of Contents

Page

INTRODUCTION AND STATEMENT OF FACTS ...................................................................1

I.      PROCEDURAL HISTORY.................................................................................................2

II.     THE CITY AGREEMENTS...............................................................................................3

III.    THE ARBITRATION PROCEEDING ...............................................................................6

IV.     THE CITY'S PETITION TO STAY ARBITRATION .......................................................7

SUMMARY OF ARGUMENT .........................................................................................................8

ARGUMENT ......................................................................................................................................9

I.      PMO EXPRESSLY WAIVED ITS RIGHT TO REMOVE THIS
        MATTER TO FEDERAL COURT ..................................................................................9

II.     THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER
        THE PETITION................................................................................................................10

        A.      No Federal Question Is Raised By Middletown's Stay Petition............................11

                1.      The Federal Arbitration Act Does Not Provide a Basis for
                        Jurisdiction................................................................................................11

                2.      No Federal Question Jurisdiction Exists Under the Well-
                        Pleaded Complaint Rule ...........................................................................12

        B.      There Is No Diversity Jurisdiction Over Middletown's Petition
                Because the Amount In Controversy Is Less Than $75,000................................14

III.    PMO'S DECLARATION IN OPPOSITION TO THE PETITION IS
        IMPROPER AND SHOULD BE STRUCK FROM THE RECORD ...............................16

Table of Authorities

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Beacon Hill Asset Management LLC v. Asset Alliance Corp.*, No. 03 Civ. 1560, 2003 U.S.Dist. LEXIS 5671 (S.D.N.Y. April 11, 2003) ............................................13

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049 (2d Cir. 1990) ..................................................................................................................11

*Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987).............................................................12

*Cowan v. Windeyer*, 795 F.Supp. 535 (N.D.N.Y. 1992) .....................................................15

*Dawson v. Fitzgerald*, No. 99-1054, 1999 U.S.App. LEXIS 20260 (10th Cir. Aug. 29, 1990) ................................................................................................................10

*Drexel Burnham Lambert, Inc. v. Valenzuela Bock*, 696 F.Supp. 957 (S.D.N.Y. 1988) ........................................................................................................................11

*Eklecco L.L.C. v. Rainforest Cafe, Inc.*, No. 02-CV-0182, 2002 U.S.Dist. LEXIS 11484 (N.D.N.Y. June 12, 1992).............................................................................9, 10

*Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983) ........11

*Gully v. First National Bank*, 299 U.S. 109 (1936) ............................................................12

*In re Harry Hoffman Printing, Inc. v. Graphic Communications International Union, Local 261*, 912 F.2d 608 (2d Cir. 1990) ............................................................11

*International Tin Council v. Amalgamet, Inc.*, 645 F.Supp. 879 (S.D.N.Y. 1996) ...........12

*Kheel v. Port of N.Y. Authority*, 457 F.2d 46 (2d Cir. 1972) .............................................15

*Metropolitan Industrial Painting Corp. v. Terminal Construction Co.*, 287 F.2d 382 (2d Cir. 1961)..................................................................................................11

*Meyers v. Long Island Lighting Co.*, 623 F.Supp. 1076 (E.D.N.Y. 1985) ........................15

*Moses H. Cone Mem'l Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983)...............................................................................................................................11

Table of Authorities

Page

*Ondova Ltd. co. v. Manila Industrial, Inc.*, No. 3:07-CV-0001-D, 2007 U.S.Dist.
    LEXIS 46080 (N.D. Tex. June 26, 2007) .................................................................10

*Oppenheimer & Co. v. Neidhardt*, No. 93 Civ. 3854, 1993 U.S.Dist. LEXIS
    18452 (S.D.N.Y. 1993) ..........................................................................................12

*Paduano & Weintraub LLP v. Wachovia Securities*, 185 F.Supp.2d 330
    (S.D.N.Y. 2002) ...............................................................................................15, 16

*Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125 (1974)..................................11

*In re Prudential Sec., Inc.*, 795 F.Supp. 657 (S.D.N.Y. 2002) ......................11, 12

*Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 342 F.Supp.2d 124 (E.D.N.Y.
    2004) ...................................................................................................................9

*Snapper, Inc. v. Redan, Inc.*, 171 F.3d 1249 (11th Cir. 1999) ...............................10

*Southland Corp. v. Keating*, 465 U.S. 1 (1984)......................................................11

*Stewart Organization, Inc. v. Richo Corp.*, 487 U.S. 22 (1988)............................9

*Westmoreland Capital Corp. v. Findlay*, 916 F.Supp. 242 (S.D.N.Y. 1996)..............11, 13

## FEDERAL STATUTES

28 U.S.C. § 1331.....................................................................................................10

28 U.S.C. § 1332............................................................................................10, 15, 16

28 U.S.C. § 1441.............................................................................................3, 10, 16

28 U.S.C. § 1447...............................................................................................1, 16

Fed. R. Civ. P. 12 ...................................................................................1, *passim*

Federal Arbitration Act, 9 U.S.C. §§ 1-16.........................................................11

## TREATISES

MOORE'S FEDERAL PRACTICE 3d § 107.14[2][g][vii].........................................15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

CITY OF MIDDLETOWN, et al.,      :
          :

     Plaintiffs,      :
          :

   -against-      :     Civil No. 07-6572 (CLB)
          :

PENCOR MASADA OXYNOL, LLC,    :
          :

     Defendant.      :

-------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND TO STATE COURT AND TO STRIKE THE DECLARATION OF NICHOLAS A. PASCALE, ESQ. IN OPPOSITION TO PETITION

### INTRODUCTION AND STATEMENT OF FACTS

Petitioners the City of Middletown (the "City") and the individual City officials named in this action (collectively with the City, the "Plaintiffs"),[1] submit this motion to remand the above-captioned action to state court pursuant to 28 U.S.C. § 1447, and, if remand is not ordered, to strike the undated Declaration of Nicholas A. Pascale, Esq. in Opposition to the Petition, on the grounds that the legal argument contained therein must be made in a motion on notice pursuant to Fed. R. Civ. P. 12.

PMO's present attempt to remove this dispute between Plaintiffs and Pencor-Masada Oxynol, LLC ("PMO") to federal court is yet another in a series of futile efforts to improperly intimidate the City and its officials by invoking issues of federal and constitutional law in an ordinary contract dispute arising under New York state law. On its face, the Petition raises no

---

[1] This matter was initiated as a special proceeding in state court wherein the City and the individual City officials were designated "Petitioners" and Pencor Masada OxyNol, LLC was designated "Respondent." Because the matter has been removed to federal court, the parties are referred to here as "Plaintiffs" and "Defendant," respectively.

issues of federal law, nor does it seek any monetary relief whatsoever or seek to foreclose PMO's ability to raise issues of federal law in an action brought in the appropriate court. Moreover, PMO expressly waived its right to removal by virtue of a forum objection waiver in its agreement with the City. Federal jurisdiction is lacking and this Court should remand the instant Petition to state court.

## I.    PROCEDURAL HISTORY

On July 6, 2007, pursuant to sections 7502 and 7503(c) of New York's Civil Practice Law and Rules ("CPLR"), Plaintiffs filed, in New York Supreme Court, Orange County, a petition to stay the arbitration proceeding (the "Petition") captioned *Pencor-Masada Oxynol, LLC v. City of Middletown, New York, et al.*, case no. 13 192 Y 01324 07 (filed on or about June 18, 2007) (the "Arbitration Proceeding"), which had been initiated by Defendant PMO. *See* Declaration of Michael Murphy, dated August 10, 2007 ("Murphy Decl.") Ex. 1 (Petition Ex. A). The Arbitration Proceeding named numerous City officials -- some in their individual capacities -- and sought the arbitration of contractual claims concerning a series of agreements between the City and PMO related to the proposed construction of a waste-to-ethanol facility by PMO in the City (the "City Agreements"). PMO ostensibly brought the Arbitration Proceeding pursuant to an arbitration clause contained in the City Agreements, which required the arbitration of certain claims relating to the City Agreements. The Arbitration Proceeding also alleged that the City had violated PMO's First and Fourteenth Amendment rights under the United States Constitution, violated PMO's New York state constitutional rights, and tortiously interfered with PMO's contractual relations.

The City seeks to stay arbitration of certain claims alleged in the Arbitration Proceeding on the grounds that certain claims and parties were beyond the scope of the arbitration clause and that certain other claims were barred by the applicable limitations period.

By notice of removal dated July 23, 2007, PMO removed the Petition to this Court pursuant to 28 U.S.C. § 1441, asserting that the Petition raised a federal question and that this Court has diversity jurisdiction over the action. Along with its removal petition, PMO also filed in this Court an undated "Declaration of Counsel in Opposition to Petition" (the "Pascale Declaration"), which contains extensive legal argument and seeks a dismissal of the Petition.

Plaintiffs now seek to remand the Petition to the state court on the grounds that PMO expressly waived its right to removal based on a forum selection clause in the City Agreements and that this Court lacks subject matter jurisdiction. Plaintiffs further request, in the event remand is not ordered, that the Court strike the Pascale Declaration on the grounds that it contains no statements of fact and the arguments contained therein must be made in a memorandum of law accompanying a motion on notice pursuant to Fed. R. Civ. P. 12 and Southern District of New York Local Rule 6.1.

## II.     THE CITY AGREEMENTS

In 1995, based on its proposal for the construction of a waste-to-ethanol facility, the City selected Pencor Orange Corporation ("Pencor"), a New York Corporation, as the preferred bidder for the City's solid waste disposal needs. Pencor's preferred-bidder status was based on its proposed use of the "OxyNol" process to convert the organic constituents of municipal solid waste ("MSW") into ethanol.

Shortly thereafter, Pencor formed or otherwise became affiliated with PMO, which was designated as project developer, with Pencor acting as PMO's managing member. Between 1996 and 2003, the City and PMO negotiated the terms of the City Agreements, which consisted of: (1) City Waste Management Services Agreement; (2) Comprehensive Waste Management Services Agreement; (3) Lease Agreement; and (4) Host Community Agreement. *See* Murphy

Decl. Ex. 1 (Petition Exs. B-E). The City and PMO were the only two parties to the City

Agreements.

The City Agreements permit either party to terminate the City Agreements in the event

PMO, *inter alia*, fails to have a fully operational waste-to-ethanol facility capable of accepting

all of the MSW and sewage sludge generated by the City, by the "Service Date" deadline of

December 9, 2008.

The arbitration clause contained in the City Agreements states in pertinent part:

> Any claim, action dispute or controversy of any kind arising out of
> or relating to this Agreement or concerning any aspect of
> performance by the City or the Company [PMO] (each a "Party")
> under the terms of this Agreement ("Dispute") shall be resolved by
> mandatory and binding arbitration administered by the American
> Arbitration Association (the "AAA"). . . . To the extent that any
> inconsistency exists between this Agreement and the foregoing
> statutes or rules, this Agreement shall control. . . .

*See* Murphy Decl. Ex. 1 (Petition Ex. B (City Waste Management Services Agreement, Schedule

5)).

The City Agreements further provide that:

> The Company [PMO] and the City hereby agree that *any action,*
> *suit or proceeding* arising out of this Agreement or any transaction
> contemplated hereby shall be brought in a court of competent
> jurisdiction in the State, and that *neither [PMO] nor the City shall*
> *object to the institution or maintenance of any such action, suit or*
> *proceeding in such court based on improper venue, forum non*
> *conveniens or any other ground relating to the appropriate forum*
> *for such action, suit or proceeding.* Notwithstanding the
> foregoing, the provisions of Schedule 5 shall govern and control.

*Id.* (Petition Ex. B, City Waste Management Services Agreement, Schedule 6, Venue) (emphasis

added).

In early 2006, more than ten years after Pencor won the bid to build the facility, PMO

had made no measurable progress in its development of the promised waste-to-ethanol facility.

- 4 -

As a result, the City began to question whether PMO would be able to live up to the promises made in the City Agreements. *See* Murphy Decl. Ex. 1 (Petition ¶¶ 38-48). In fact, by 2007, PMO resorted to proposing the construction of a small-scale pilot waste-to-ethanol facility and transfer station in lieu the promised full-scale waste-to-ethanol plant agreed upon in the City Agreements. In response, the City took the position that such a project was not contemplated by the City Agreements and that PMO remained obligated to construct a full-scale facility. The City further reiterated that the deadline for doing so was December 9, 2008. *Id.* (Petition ¶¶ 43, 52).

On June 11, 2007, following a flurry of correspondence and a specific demand from PMO's counsel, the City's Common Council adopted a resolution (the "June Resolution") in support of a PMO pre-application for financing support from the United States Department of Energy. However, the City was not willing to waive any of its rights in adopting such a resolution. Thus, the support expressed in the June Resolution was contingent on PMO's full compliance with the City Agreements. The June Resolution expressly stated the City's position that the Service Date deadline was December 9, 2008, and that, pursuant to the City Agreements, PMO must have a full-scale waste-to-ethanol facility on the project site by that date. *See* Murphy Decl. Ex. 1 (Petition Ex. L).

By letter dated June 12, 2007, the City restated its position, first stated in correspondence dated January 4, 2007 to PMO, that PMO's proposed development of a transfer station and small-scale pilot waste-to-ethanol facility in lieu the promised full-scale waste-to-ethanol plant "would be a direct violation of the City/PMO agreements, and would eviscerate the basis for the City's decision to contract with PMO in the first place." The City further reiterated its consistent

position that the Service Date deadline was December 9, 2008. *See* Murphy Decl. Ex. 1 (Petition Ex. M).

## III.    THE ARBITRATION PROCEEDING

Apparently dissatisfied with the City's position concerning the City Agreements, in June 2007, PMO filed the Arbitration Proceeding, seeking, among other things, a declaration that the illness and death of one of PMO's parent corporation's officers -- Daryl Harms -- excused its performance under the City Agreements. *See* Murphy Decl. Ex. 1 (Petition Ex. A). In the Arbitration Proceeding, in addition to its contract claim, PMO alleged that the Plaintiffs violated "PMO's rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution, which is actionable under 42 U.S.C. § 1983 . . .," that the Plaintiffs violated "PMO's freedom of political association guaranteed under the First Amendment of the United States Constitution, which is actionable under 42 U.S.C. § 1983 . . .," that Plaintiffs violated "PMO's rights under the laws of New York to be protect [sic] from tortious interference with the City's agreements and third-party relationships" and that the Plaintiffs violated "PMO's rights under New York law to due process and equal protection." *Id.*

PMO's Complaint in Arbitration seeks, *inter alia*: (1) declarations that PMO's rights under "the City agreements, the laws of the State of New York, and the First and Fourteenth Amendments of the United States Constitution" have been violated; (2) monetary damages, including all of PMO's alleged project development costs; (3) punitive damages against individual Plaintiffs Duncanson, Meyer and Rollins; and (4) attorneys' fees "under 42 USC § 1988 for the violation of PMO's First and Fourteenth Amendment rights." *Id.*

IV.    **THE CITY'S PETITION TO STAY ARBITRATION**

Because the Arbitration Proceeding named individual defendants who were not parties to the City Agreements, raised claims far exceeding the scope of the arbitration clause in the City Agreements and asserted causes of action barred by the applicable limitations period, the Plaintiffs filed the Petition pursuant to CPLR 7503, seeking a stay of the arbitration those claims. *See* Murphy Decl. Ex. 1 (Petition).  Specifically, the Plaintiffs sought a stay of arbitration as to: (1) individuals who have not agreed to submit disputes to arbitration; (2) claims for punitive damages asserted against those individuals; (3) PMO's claim of tortious interference based on PMO's failure to timely file a notice of claim as required under state law; (4) PMO's New York state constitutional claims based on PMO's failure to timely file a notice of claim as required under New York state law; and (5) federal constitutional claims on the basis that those claims exceeded the scope of the arbitration clause and because New York State public policy favors the adjudication of constitutional claims by a court.  *Id.*  The Plaintiffs did not seek an adjudication on the merits of PMO's claims, nor monetary damages, nor an injunction restraining PMO from pursuing any of its federal claims in the appropriate court.[2]

---

[2] PMO's asserts that the City sought to stay arbitration based concerns that the AAA's arbitrator, Judge Bissel is "not equipped to deal with constitutional issues."  Pascale Decl. ¶ 50. This is simply false.  First, we note that Judge Bissell's role as arbitrator has not been confirmed by the AAA.  Second, the City has no objection to Judge Bissel, if confirmed as arbitrator, deciding issues properly presented to him.  Third, whether a party should be forced to defend against claims in arbitration where that party's right to appeal is substantively impacted is no small issue, especially where a broad array of constitutional violations are alleged.  The Petition has nothing to do with Judge Bissel's competence, experience or abilities.  Thus, PMO's attempt to belittle the purpose of the City's Petition should be rejected.

By order to show cause dated July 9, 2007, the Honorable Joseph G. Owen, J.S.C., granted a temporary stay of the Arbitration Proceeding until the court could resolve the issues raised in the Petition. *See* Murphy Decl. Ex. 2 (Order). Shortly after Justice Own entered the order, PMO removed the Petition to this Court.

## SUMMARY OF ARGUMENT

The Petition should be remanded to the state court because PMO waived its right to remove the Petition and because federal courts lack subject matter jurisdiction over the Petition. First, the venue provision contained in the City Agreements is clear: neither PMO nor the City can object to any action or proceeding on any ground relating to the appropriate forum. Thus, any action or proceeding properly commenced by either party in state court -- such as the City's Petition -- cannot be removed to federal court on the opposing party's forum objection. Courts routinely enforce such forum objection waivers in the context of removal, and the waiver in the City Agreements should be enforced in this instance.

Second, the Court lacks federal question jurisdiction over the Petition. The Petition raises only state law issues and seeks relief solely pursuant to state law. In determining whether federal removal jurisdiction exists, courts look to whether federal subject matter jurisdiction existed at the time the pleading was removed. Furthermore, under the well-pleaded complaint rule, which looks to the removed pleading to determine whether jurisdiction is lacking, it is apparent that the Petition raises no federal questions and seeks no relief unique to the federal courts.

Lastly, any attempt to premise jurisdiction on the diversity of the parties must fail because the Petition places no monetary amount in controversy and the value of the injunctive relief sought is nil.

**ARGUMENT**

I.    **PMO EXPRESSLY WAIVED ITS RIGHT TO REMOVE THIS MATTER TO
FEDERAL COURT**

Courts in the Second Circuit have found a waiver of the right to remove a case to federal

court where the forum selection clause contains explicit language evidencing waiver. *Rabbi*

*Jacob Joseph Sch. v. Province of Mendoza*, 342 F. Supp. 2d 124, 128 (E.D.N.Y. 2004). "The

Supreme Court has acknowledged that forum selection clauses are prima facie valid and should

be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the

circumstances." *Eklecco L.L.C. v. Rainforest Cafe, Inc.*, No. 02-CV-0182, 2002 U.S. Dist.

LEXIS 11484 at *7 (N.D.N.Y. June 12, 2002) (citing *Stewart Organization, Inc. v. Richo Corp.*,

487 U.S. 22 (1988) (Kennedy, J. concurring)).  A forum selection clause bargained for at arms

length by experienced and sophisticated parties must be enforced "absent some compelling and

countervailing reason." *Id.* (remanding action to state court based on forum selection clause).

Here, the City and PMO agreed that when  an "action, suit or proceeding arising out of"

the City Agreements is commenced in a court of competent jurisdiction, "neither [PMO] nor the

City shall object to the institution or maintenance of any such action, suit or proceeding in such

court based on improper venue, forum non conveniens or any other ground relating to the

appropriate forum for such action, suit or proceeding." Murphy Decl. Ex. 1 (Petition Ex. B,

Schedule 6, Venue).  This mandatory venue provision exists to prevent precisely the sort of

procedural maneuvering that PMO has engaged in here by objecting in a removal action to

Plaintiffs' chosen forum.  The Petition seeks a stay of arbitration based on state law.  Plaintiffs

therefore properly commenced the litigation in state court.[3]    PMO explicitly waived its right to

object to Plaintiffs' forum choice and that waiver should be enforced.

A forum objection waiver precludes removal. *See, e.g., Snapper, Inc. v. Redan, Inc.*, 171

F.3d 1249 (11th Cir. 1999) ( where clause provides for forum at election of the creditor, the

debtor waived right to removal); *Dawson v. Fitzgerald*, No. 99-1054, 1999 U.S. App. Lexis

20260 (10th Cir. Aug. 29, 1999); *Ondova Ltd. co. v. Manila Indus., Inc.*, No. 3:07-CV-0001-D,

2007 U.S. Dist. Lexis 46080 (N.D. Tex. June 26, 2007). There is no compelling reason not to

enforce PMO's waiver and this Court should remand the Petition to state court on that basis

alone. *See Eklecco L.L.C.*, 2002 U.S. Dist. LEXIS 11484 at *7.

## II.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE PETITION

Removal is further improper because the Court lacks federal subject matter jursdiction.

A defendant can remove to federal court only where the federal court would otherwise have

jurisdiction over an action. 28 U.S.C. § 1441(a). Federal district courts have jurisdiction over

civil actions between citizens of different states only where, among other things, the amount in

controversy exceeds $75,000.00. 28 U.S.C. § 1332. Absent diversity jurisdiction, an action can

be removed only if the district court had original jurisdiction based on a claim or right arising

under the Constitution, treaties or laws of the United States, i.e., where the court has federal

question jurisdiction. 28 U.S.C. § 1331; 28 U.S.C. § 1441(b).

---

[3] Article 75 of the CPLR specifically authorizes a party to file a petition to stay arbitration in New York State Supreme Court. The City Agreements expressly provide that the agreements and any question concerning their "validity, construction or performance shall be governed by the laws of the State [of New York]." Murphy Decl. Ex. 1(Petition Ex. B Schedule 6, Governing Law). CPLR 7503(c) states that "[a]ny provision in an arbitration agreement or arbitration rules which waives the right to apply for a stay of arbitration is hereby declared null and void." Accordingly, under New York law, Petitioners properly commenced this proceeding in state court.

Federal question jurisdiction exists only when "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983). The federal question *must* be disclosed on the face of the complaint, without reference to possible defenses by defendant. *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127-128 (1974).

### A.    No Federal Question Is Raised By Middletown's Stay Petition

### 1.    The Federal Arbitration Act Does Not Provide a Basis for Jurisdiction

It is well-established that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, does not create federal question jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983); *Westmoreland Capital Corp. v. Findlay*, 916 F. Supp. 242 (S.D.N.Y. 1996); *In re Prudential Sec., Inc.*, 795 F. Supp. 657 (S.D.N.Y. 1992). The FAA establishes and regulates the duty to honor an agreement to arbitrate; it does not establish an independent ground for jurisdiction. *Southland Corp. v. Keating*, 465 U.S. 1, 15, (1984); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983); *In re Harry Hoffman Printing, Inc. v. Graphic Communications International Union, Local 261*, 912 F.2d 608, 611 (2d Cir. 1990); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1051 n.1 (2d Cir. 1990); *Metro Industrial Painting Corp. v. Terminal Constr. Co.*, 287 F.2d 382, 384 (2d Cir. 1961), *cert. denied*, 368 U.S. 817 (1961); *Drexel Burnham Lambert, Inc. v. Valenzuela Bock*, 696 F. Supp. 957, 960 (S.D.N.Y. 1988).

Before a district court can entertain a petition seeking relief under the FAA, there must be an independent basis of jurisdiction. *Harry Hoffman Printing, Inc. v. Graphic Communications,*

*Int'l Union, Local 261*, 912 F.2d 608, 611 (2d Cir. 1990).  Hence, PMO cannot rely on the FAA

to support its assertion that the City's Petition raises a federal question.

### 2.    No Federal Question Jurisdiction Exists Under the Well-Pleaded Complaint Rule

The presence of a federal question is determined by the so-called "well-pleaded

complaint rule," which provides that federal jurisdiction exists only when a federal question is

presented on the face of the plaintiff's properly pleaded complaint. *Caterpillar, Inc. v. Williams*,

482 U.S. 386, 392 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13 (1936)).  The

plaintiff is the master of his or her claims; thus, he or she may avoid federal jurisdiction by

relying solely upon state law. *Id.*  Under the "well-pleaded complaint rule" removal on federal

question grounds is not permitted simply because a defendant has asserted or may assert a

federal defense. *International Tin Council v. Amalgamet, Inc.*, 645 F. Supp. 879, 881 (S.D.N.Y.

1986).  A petitioner seeking a stay of arbitration is considered the "plaintiff" for purposes of

resolving removal disputes. *Oppenheimer & Co. v. Neidhardt*, No. 93 Civ. 3854, 1993 U.S.

Dist. LEXIS 18452, *6 (S.D.N.Y. 1993).

Courts have consistently held that, where a petition to stay arbitration is removed, the

jurisdictional question is answered by looking to the removed petition, not the underlying

arbitration.  In *In re Prudential Sec., Inc.*, 795 F. Supp. 657 (S.D.N.Y. 1992), the court addressed

securities brokers' petition to stay arbitration of securities purchasers' civil RICO and federal

securities laws claims.  The brokers filed their stay petition in state court, claiming that the

purchasers' claims were barred under NASD's limitations period.  The purchasers removed and,

upon the brokers' remand motion, the court held that the brokers' stay petition raised no federal

question since the brokers' right to relief did not necessarily depend upon resolution of the RICO

- 12 -

claims asserted.  The court reasoned that the right to stay arbitration was created by private

agreement -- the NASD contract -- not by federal law.

Likewise, in *Westmoreland Capital Corp. v. Findlay*, 916 F. Supp. 242 (S.D.N.Y. 1996),

clients of a financial planning and investment counseling company charged Westmoreland with

securities fraud and sought an arbitration proceeding before the NASD.  Westmoreland sought to

enjoin the arbitration proceedings by filing a petition in federal court.  The court *sua sponte*

reviewed the question of federal jurisdiction, dismissing Westmoreland's action for want of

jurisdiction.  The court noted that federal question jurisdiction cannot be found by looking

beyond the petition to the underlying claims that are the subject of the arbitration.  *Id.* at 246

(*citing In re Prudential Sec., Inc.*, 795 F. Supp. at 661-662).

Even where the removed complaint ostensibly raises issues of federal law, those issues

must be substantial in order for federal question jurisdiction to inure.  *Beacon Hill Asset Mgmt.*

*LLC v. Asset Alliance Corp.*, No. 03 Civ. 1560, 2003 U.S. Dist. LEXIS 5671 (S.D.N.Y. Mar. 25,

2003).  In that case, petitioners filed a petition in New York state court to stay arbitration,

asserting that the arbitration would prejudice or abridge their rights under the Fifth Amendment

to the United States Constitution, in connection with a private investigation being conducted by

the Securities and Exchange Commission ("SEC"), a civil action by the SEC, and a grand jury

investigation.  Respondents removed the petition, asserting that the basis for federal question

jurisdiction was the Fifth Amendment issue raised in the stay petition.  The court directed the

parties to brief the issue and ultimately found petitioner's federal claim insubstantial.  *See*

*Beacon Hill Asset Mgmt. LLC v. Asset Alliance Corp.*, No. 03 Civ. 1560, 2003 U.S. Dist. LEXIS

6001 (S.D.N.Y. April 11, 2003) (remanding stay petition to state court).

PMO's assertion that the constitutional issues raised in the Arbitration Proceeding are sufficient to establish federal question jurisdiction is without any support in the caselaw. *Prudential, Westmoreland* and *Beacon Hill* establish beyond doubt that the removed pleading must raise a substantial issue of federal law in order to create federal question jurisdiction. There is no support whatsoever for the proposition that allegations of federal law in an underlying arbitration proceeding are sufficient to create federal jurisdiction over a stay petition.

It is plain from the face of the Petition that only issues of state law, including state contract law, are at issue, to wit, Plaintiffs seek a ruling regarding the scope of the arbitration clause in the City Agreements and PMO's failure to file a notice of claim in accordance with state law prior to bringing the Arbitration Proceeding. Strikingly, after removing the action, PMO admits that this Court lacks jurisdiction to decide issues concerning New York state's notice of claim requirement. *See* Pascale Decl. ¶ 47. By PMO's own admission, the Petition raises no issue of federal law. The potential existence of a federal question in the underlying Arbitration Proceeding or in a defense to the Petition is insufficient to establish this Court's jurisdiction.

**B.      There Is No Diversity Jurisdiction Over Middletown's Petition Because the Amount In Controversy Is Less Than $75,000**

The Petition seeks no monetary relief and solely seeks to enjoin arbitration of certain claims raised in the Arbitration Proceeding. PMO's removal petition fails to establish that the Petition places more than $75,000 in controversy. Moreover, the Petition does not seek to foreclose PMO from exercising its rights to adjudicate non-arbitrable claims in the appropriate court of competent jurisdiction. Accordingly, the relief sought in the Petition has no monetary

value and is, therefore, insufficient to meet the amount in controversy requirement of 28 U.S.C. § 1332.

In determining the value of equitable relief in a removal proceeding, the amount in controversy is measured strictly from the plaintiff's perspective. *Kheel v. Port of N.Y. Auth.*, 457 F.2d 46, 48-49 (2d Cir. 1972); *see also, e.g., Cowan v. Windeyer*, 795 F. Supp. 535, 536-39 (N.D.N.Y. 1992) (amount in controversy for jurisdictional purposes is measured strictly from plaintiff's perspective); *Meyers v. Long Island Lighting Co.*, 623 F. Supp. 1076, 1078 (E.D.N.Y. 1985) (same); MOORE'S FEDERAL PRACTICE 3d § 107.14[2][g][vii]. "The plaintiff's viewpoint rule is consistent with the general principle of strict construction of the right of removal, and it protects the plaintiff's initial choice of forum." MOORE'S FEDERAL PRACTICE 3d, *supra*. In connection with the removal of a petition to stay arbitration, the amount in controversy in the underlying arbitration is not used to calculate the amount in controversy in the stay petition. *Paduano & Weintraub LLP v. Wachovia Secs.*, 185 F. Supp. 2d 330, 333 (S.D.N.Y. 2002).

From Plaintiffs' point of view, the monetary value of the Petition is nil. In seeking to stay certain of the PMO's arbitration claims, Plaintiffs seek to protect their rights under state law to have certain claims decided by a court, with a right to appeal, rather than in arbitration, with no right of appeal. Article 75 of the CPLR permits access the courts for purposes of staying non-arbitrable claims and adjudicating whether a claim is barred by a limitation period, including whether the failure to timely file a notice of claim bars an action. This right to access the New York courts has no *per se* monetary value. PMO premises the amount in controversy component

of its diversity jurisdiction claim on the amount in controversy in the Arbitration Proceeding.[4]

This Court has rejected that approach in the past and there is no reason to look beyond the

Petition to determine the amount in controversy here. *See Paduano & Weintraub*, 185 F. Supp.

2d at 333. PMO fails to meet the amount in controversy requirement and, consequently, this

Court lacks diversity jurisdiction and should remand the Petition to the state court. *See* 28

U.S.C. §§ 1332, 1441, 1447.

### III.     PMO'S DECLARATION IN OPPOSITION TO THE PETITION IS IMPROPER AND SHOULD BE STRUCK FROM THE RECORD

PMO improperly submitted the Pascale Declaration, which contains extensive *ex parte*

legal argument and requests the dismissal of the Petition, to this Court in an apparent attempt to

circumvent the constraints of federal motion practice. Southern District of New York Local Rule

6.1 ("Local Rule 6.1") unequivocally provides that "No *ex parte* order, or order to show cause to

bring on a motion, will be granted except upon a clear and specific showing by affidavit of good

and sufficient reasons why a procedure other than by notice of motion is necessary, and stating

whether a previous application for similar relief has been made." The Pascale Declaration seeks

the dismissal of the Petition and contains solely legal arguments in opposition to the Petition.

The Pascale Declaration amounts to a Fed. R. Civ. P. 12 motion under the guise of a declaration

and provides no return date or notice of motion that would provide Plaintiffs a right of response.

The Pascale Declaration does not comport with Local Rule 6.1 and, in the event remand is not

ordered, should be struck from the record. Plaintiffs do not respond here to substantive

---

[4] Petitioners specifically reserve their right to challenge the actual diversity of the parties upon the completion of appropriate discovery regarding PMO's business activities in New York and to respond to the substance of the legal arguments raised in the Pascale Declaration at the appropriate time.

arguments in the Pascale Declaration, but expressly reserve their rights to do so in the event PMO asserts those arguments in a properly noticed motion.  Plaintiffs request that the Court strike the Pascale Declaration from the record.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully requests that the Court: (1) remand the Petition to New York Supreme Court, Orange County; (2) in the event remand is not ordered, strike the Pascale Declaration; and (3) grant such other and further relief as the Court deems necessary and proper.


Dated: New York, New York
        August 10, 2007

                                    Respectfully submitted,

                                    BEVERIDGE & DIAMOND, P.C.


                                    By: _____
                                        Christopher J. McKenzie, Esq. (CM 2615)
                                        Michael G. Murphy, Esq. (MM5472)
                                        Zackary D. Knaub, Esq. (ZK 1724)

                                        477 Madison Avenue, 15th Floor
                                        New York, NY 10022-5802
                                        Tel.: (212) 702-5400
                                        Fax: (212) 702-5450

                                        Attorneys for Plaintiffs

Of Counsel:    Alex Smith, Esq. (AS 5052)
               Office of the Corporation Counsel
               City of Middletown
               16 James Street
               Middletown, New York 10940
               (845) 346-4140

- 17 -