UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------X

CITY OF MIDDLETOWN, et al.,

        Petitioners,

        -against-

PENCOR-MASADA OXYNOL, LLC,

        Respondent.

-----------------------------X

**DECLARATION OF COUNSEL  IN
OPPOSITION TO PETITION**

07 CV 6572 (CLB)

Index No. 2007-6035

Nicholas A. Pascale, Esq. (NP-5766) an attorney duly admitted to practice before this Court hereby declares the following pursuant to 28 USCS § 1746:

1.     I am associated with the law firm of Tarshis, Catania, Liberth, Mahon & Milligram, P.L.L.C., attorneys for Respondent, PENCOR-MASADA OXYNOL, LLC ("PMO") in the above captioned matter. I make this declaration based upon the files regarding this matter maintained by this office.

2.     This declaration is respectfully submitted in opposition to the petition of the City of Middletown et al. seeking to stay and to dismiss certain PMO claims made in an arbitration proceeding. PMO prays that the Court deny the relief sought in the petition and grant entirely the relief requested in the counter-claims of PMO as set forth in its verified answer, together with such other and further relief as to this Court may seem just, proper, and equitable.

3.     All exhibits referred to herein are those annexed to the City of Middletown Petition removed to this Court and filed herewith unless otherwise identified.

## Parties

4.    The City of Middletown ("City") is a municipal corporation organized and existing under the laws of the State of New York, located in Orange County, New York with an office located at 16 James Street, Middletown, New York.[1]

5.    Pencor-Masada Oxynol, LLC ("PMO") is a Delaware Limited Liability Company with a principal place of business at 2170 Highland Avenue S. Suite 100, Birmingham, Alabama.

## Background and Facts

6.    The facts underlying this matter are set forth at length in the PMO Arbitration Complaint annexed to the City Petition as Exhibit "A" and are also stated in PMO's Answer with Counter-Claim. Rather than re-state the lengthy factual averments here, PMO hereby incorporates its Counter-Claim by reference as though set forth at length herein.

## Procedural Posture

7.    On or about June 18th, 2007, PMO, pursuant to the procedures set forth in the dispute resolution clause to the written agreements with the City of Middletown, commenced an arbitration proceeding with the American Arbitration Association (AAA) against the City and certain individual members of the Common Council of the City. A copy of the arbitration filing is annexed as Exhibit "A" to the Petition.

---

[1]    The complaint filed by PMO in the arbitration lists individual members of the City of Middletown Common Council as defendants. The City's Petition, *inter alia*, seeks dismissal of the claims against the individuals in the arbitration. PMO will discontinue, without prejudice, its claims against the individuals in the arbitration. Therefore, the individuals are not identified as parties herein. Only the City remains a defendant in the arbitration and the first two claims for relief made in the Petition (at paragraphs 60-73 of the Petition) vis-à-vis the individual defendants are moot and are not addressed in this submission. Only the third, fourth, and fifth claims for relief are addressed and each must be dismissed.

8.    In the arbitration complaint, PMO asserted claims for, *inter alia*, breach of contract, tortious interference with contractual and business relations, violations of the Constitution of the State of New York and violations of PMO's Federal constitutional rights to free political association, due process, and equal protection as applicable to the City under the 14th Amendment and made actionable by 42 U.S.C.S. §1983, together with a claim for attorney fees under 42 U.S.C.S. §1988.

9.    The parties agreed on July 3rd, 2007 that the AAA name the Honorable John W. Bissell, retired Chief Judge of the U.S. District Court, District of New Jersey, as the arbitrator in this case.

10.    Neither the City nor the individual defendants interposed an answer in the arbitration. Accordingly, the City filed a Petition to stay and/or dismiss the arbitration by Order to Show Cause dated July 9th, 2007, and signed by the Hon. Joseph G. Owen, a justice of the New York State Supreme Court for the County of Orange. The petition required an answer and opposition by July 23rd, 2007.

11.    In the Petition, the City sought to have the state court "permanently stay and/or otherwise dismiss" PMO'S claims for tortious interference, its claims under the New York State Constitution and its federal claims under section 1983. Ostensibly, the City seeks to dismiss PMO's tort claims and New York Constitutional law claims on the grounds that they are barred by New York's "Notice of Claim" statute arising under sections 50-e and 50-i of the New York General Municipal Law. The City seeks to dismiss the section 1983 claims on the grounds that they are "beyond the scope of the arbitration agreement" and "non-arbitral on policy grounds". The Petition did not seek to stay or dismiss arbitration of PMO's contract claims.

3

12.     On July 23rd, 2007 PMO caused the state court action filed by the City to be removed by duly filed notice of removal to the United States District Court for the Southern District of New York. *See generally*, 28 U.S.C. §1441, et seq.

13.     Federal Rule of Civil Procedure 81(c) states:

> (c) Removed Actions. These rules apply to civil actions removed to the United States district courts from the state courts and govern procedure after removal. Repleading is not necessary unless the court so orders. In a removed action in which the defendant has not answered, the defendant shall answer or present the other defenses or objections available under these rules within 20 days after the receipt through service or otherwise of a copy of the initial pleading setting forth the claim for relief upon which the action or proceeding is based, or within 20 days after the service of summons upon such initial pleading, then filed, or within 5 days after the filing of the petition for removal, whichever period is longest.

USCS Fed Rules Civ Proc R 81 (USCS 2007).

14.     PMO did not file an answer in the state court action nor did it make a motion, request an adjournment of any kind, nor participate in any way in the state court action.

15.     Accordingly, although answering and opposition papers were to be filed in state court by July 23rd, 2007, by operation of FRCP 81(c)the time for PMO to do so is extended by at least 5 days or until July 28th, 2007. *See*, FRCP 81(c).

16.     Nevertheless, it is the express intention of PMO to file its answering and opposition papers with the United States District Court for the Southern District of New York contemporaneously with the filing of its notice of removal on July 23rd, 2007. In the event that PMO is precluded from so doing for what ever reason, PMO respectfully requests the Court recognize the 5 day extension afforded by FRCP 81(c) on filing the notice of removal.

17.     This opposition brief together with PMO's answer filed herewith is now respectfully submitted to this Court in opposition to the City's Petition seeking a stay and dismissal of certain of PMO'S arbitration claims.

4

## Argument

### Point I:

### The Petitioner Improperly Relies Upon New York State Law

*A) The Federal Arbitration Act Controls.*

18.     The Petitioner improperly relies upon New York State statutes as authority for

the relief which it seeks.  It is indisputable that the provisions of the Federal Arbitration Act

(FAA) 9 U.S.C. et seq., and the federal cases interpreting same, control dispute resolution

under the Agreement between the City and PMO. The underlying Agreement between the

City and PMO expressly invokes the FAA. The Agreement contains a detailed and

comprehensive Dispute Resolution Clause ("DRC") at Schedule 5 thereof which states in

relevant part:

> Any claim, action, dispute, or controversy of any kind
> arising out of or relating to this Agreement or concerning any
> aspect of performance by the City or the Company (each a Party)
> under the terms of the Agreement ("Dispute") shall be resolved by
> mandatory and binding arbitration administered by the American
> Arbitration Association ("AAA") pursuant to the Federal
> Arbitration Act (Title 9 of the United States Code) in accordance
> with this Agreement and the then applicable Commercial
> Arbitration Rules of The AAA.

> The parties acknowledge and agree that the transactions
> evidenced and contemplated hereby involve "commerce" as
> contemplated in Section 2 of the Federal Arbitration Act.

> If Title 9 of the United States Code is inapplicable to any
> such dispute for any reason, such arbitration shall be conducted
> pursuant to this Agreement and the then applicable Commercial
> Arbitration Rules of the AAA.

*See*, Exhibit "B" annexed to the Petition at Schedule "5"; *see also* Rules 7-(a),(b) of

the AAA which detail the powers of the arbitrator.[2]

19.    Since the parties clearly and unequivocally expressed in the DRC that the FAA

controls dispute resolution, and since the project clearly touches upon commerce, the

Petitioner's resort to Article 75 of the New York Civil Practice Law and Rules and other New

York State Laws is plainly unauthorized under the terms of the Agreement.[3] In any event the

parties further agreed that even if the FAA does not apply for whatever reason, the

Commercial Rules of the AAA will apply. As noted above, AAA Commercial Arbitration

Rules 7(a),(b) clearly reserve to the arbitrator issues pertinent to jurisdiction and the scope of

the agreement to arbitrate. No where in the Agreement are the New York Civil Practice Law

and Rules cited.

---

[2]    Rules 7(a)&(b) of the AAA Commercial Rules State:

R-7. Jurisdiction

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

[3]    There is a divergence between Federal and New York State Courts concerning the inter-play and priority between the Federal Arbitration Act and specific choice of law provisions in dispute resolution clauses. The New York State Court of Appeals has taken the position that where a contract otherwise governed by the FAA also contains a choice of law provision which <u>expressly</u> prefers state law on questions concerning dispute resolution, then, in that event the state law should trump the FAA. *See, e.g.,* Diamond Waterproofing Sys. v. 55 Liberty Owners Corp., 4 N.Y.3d 247, 253 (N.Y. 2005). In Diamond Waterproofing, the Court found that the talismanic statement that state law controls "enforcement" of the agreement means state law controls arbitral issues as well, notwithstanding that the contract is otherwise governed by the FAA and Federal law. To the contrary, federal courts confronting this sort of issue have come down squarely on the side of applying the FAA even where a choice of law provision may be present. *See, e.g.,* Goldman, Sachs & Co. v. Griffin, 2007 U.S. Dist. LEXIS 36674 (S.D.N.Y. 2007). In this case, there is a choice of law provision that refers to state law at paragraph 16 of Schedule "6". However, the talismanic term "enforcement" is absent. Thus, even under Diamond Waterproofing, the FAA would control. Also, the choice of law clause does not appear in Schedule "5" which is the section concerning dispute resolution thereby evincing a lack of intent that state law should control dispute resolution. Finally, since this is a Federal forum, this Court should follow the Second Circuit

20. The DRC provision invoking the FAA must be specifically enforced and should not be disregarded in favor of the State law relied upon by the Petitioner. Quite simply, it is *ultra vires* for the Petitioner to invoke State law as it has done in the Petition. The Court should reject this effort.

21. Indeed, it is the express statutory command of the FAA that a written provision in a contract shall be valid, irrevocable, and enforceable. Section 2 of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 USCS § 2 (USCS 2007).

### B) Federal Law Strongly Favors Arbitration.

22. The body of federal law interpreting the strong language of section 2 has taken it to establish a presumptive preference for the arbitration of disputes. It has been held:

> Section 2 [of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration within the coverage of the Act." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983)

Goldman et al. v. Griffin, 2007 U.S. Dist. LEXIS 36674, (S.D.N.Y., 2007).

23. The presumption in favor of arbitration is so strong that where a Court is asked, as here, to stay arbitration it is restricted to a very limited four part inquiry:

---

precedent cited in Goldman and disregard contrary state law from Diamond.

7

> [A] court asked to stay arbitration has four tasks: <u>First</u>, it must
> determine whether the parties agreed to arbitrate; <u>second</u>, it must
> determine the scope of that agreement; <u>third</u>, if federal statutory
> claims are asserted, it must consider whether Congress intended
> those claims to be nonarbitrable; and <u>fourth</u>, if the court concludes
> that some, but not all, of the claims in the case are arbitrable, it
> must then determine whether to stay the balance of the proceedings
> pending arbitration.

<u>Shearson Lehman et al v. Wagoner</u>, 944 F.2d 114 (2d Cir. 1991)(*emphasis supplied*).

        1) <u>The Parties Clearly Agreed To Arbitrate.</u>

24.    It is not disputed that the City and PMO agreed to arbitrate. The City has not

sought, for instance to stay PMO's contract claims and cannot verily dispute the written DRC

in the Agreement. The first inquiry must be answered in the affirmative.

        2) <u>All Of PMO's Claims Are Within The DRC.</u>

25.    In considering the scope of the agreement the Court should be guided by the

following principles:

> [A]ny doubts concerning the scope of arbitrable issues should be
> resolved in favor of arbitration, whether the problem at hand is the
> construction of the contract language itself or an allegation of
> waiver, delay, or a like defense to arbitrability." <u>Moses H. Cone</u>
> <u>Memorial Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25, 74
> L. Ed. 2d 765, 103 S. Ct. 927 (1983). The scope of the arbitration
> clause implicates the intent of the parties, but doubts regarding that
> intent must also be resolved in favor of arbitrability. <u>McDonnell</u>
> <u>Douglas Fin. Corp. v. Pennsylvania Power & Light Co.</u>, 858 F.2d
> 825, 831 (2d Cir. 1988). Again, when the contract contains a
> "broad" arbitration clause, as the one at issue here, that purports "to
> refer all disputes arising out of a contract to arbitration," the strong
> presumption in favor of arbitrability applies with even greater
> force. Id. at 832, (*citing* <u>AT&T Technologies</u>, 475 U.S. at 650).

<u>Shearson Lehman et al v. Wagoner</u>, 944 F.2d 114 (2d Cir. 1991).

26.    The DRC between PMO and the City is exceedingly broad encompassing:

"Any claim, action, dispute, or controversy of any kind arising out of or relating to this Agreement or concerning any aspect of performance by the City or the Company (each a Party) under the terms of the Agreement ("Dispute"). *See*, Exhibit "A".

27.     Given the breadth of the Agreement and the overwhelmingly strong preference of Federal Law for arbitration, there is no question but that the claims asserted by PMO in its arbitration complaint all fall within the scope of the DRC and are therefore arbitral.

28.     The only claim which the City argues may be outside the scope of the DRC are PMO's federal claims arising under section 1983. However, as discussed below the City's arguments in that regard are insufficient and must fail.

3)     <u>PMO'S Statutory Claims Are Arbitral</u>

29.     The City seeks to dismiss PMO's claims arising under section 1983 on the vague and shadowy ground that some un-specified "public policy" bars arbitration of such claims. As set forth below, the City's claims in this regard are insufficient and must fail as a matter of law.

4)     <u>The Arbitration Must Proceed Even If Some Of The Claims Are Non-Arbitral</u>.

30.     Even if the Court were to determine that certain of PMO's claims are non-arbitral, there is no sound basis for staying arbitration of those claims which are clearly arbitral. For instance, the City has never requested that PMO's contract claims should be stayed. At a minimum, the temporary restraining order signed by the State Court should be dissolved or modified to permit arbitration of the contract claims to proceed. As a practical matter, the resolution of the contract claims may well have the effect of sharpening the issues and will make prosecution of the remaining non-contract claims more or less critical.

Therefore, it is in everyone's best interest that the arbitration of the contract claims proceed without further delay. PMO respectfully requests that the Court, pending consideration of the Petition, modify or dissolve the State Court order to permit arbitration of at least the contract claims to proceed.

**Point II:**

**Petitioner's First and Second Claims Must Be Dismissed Since**

**They Have Been Rendered Moot By PMO**

31.     The complaint filed by PMO in the underlying arbitration lists various individual members of the City of Middletown Common Council as defendants. *See,* Exhibit "A". The City's Petition, *inter alia*, seeks dismissal of the claims against the individuals in the arbitration. PMO will discontinue, without prejudice, its claims against the individuals in the arbitration. Therefore, the individuals are not identified as parties herein. Only the City remains a defendant in the underlying arbitration and the first two claims for relief made in the Petition (at paragraphs 60-73 of the Petition) vis-à-vis the individual defendants are moot and are not addressed in this submission. Only the third, fourth, and fifth claims for relief are addressed and each must be dismissed.

**Point III:**

**Petitioner's Third and Fourth Claims Must Be Dismissed Since The Court Has No**

**Jurisdiction To Entertain Them.**

*A) Limitations Defenses Are Issues For The Arbitrator.*

32.     Petitioner's third and fourth claims of the Petition are based solely on the New York General Municipal Law and The New York Civil Practice Law and Rules.

33.     However, it is well settled law in the Second Circuit that defenses to

arbitration in the nature of a state statute of limitations or other statutory defenses are reserved to the arbitrator to decide. Dismissal of arbitration claims based on a statute of limitations is not one of the four functions allotted to the Court, and thus the Court is without jurisdiction to entertain such a request. *See*, <u>Shearson Lehman et al v. Wagoner</u>, 944 F.2d 114 (2d Cir. 1991).

34.     The matter of <u>Goldman, Sachs & Co. v. Griffin</u>, 2007 U.S. Dist. LEXIS 36674 (SDNY 2007) is on all fours with the issue presented here. In that case, as in this case, a special proceeding was commenced in New York State Court by the party seeking to stay arbitration. *See*, <u>Goldman</u>, *supra*. Likewise, the party resisting the stay application removed the petition to Federal Court and urged that the issues raised by the petition were properly referred to the arbitrator for consideration under the FAA and Federal Law.

35.     The Court, in resolving the question in favor of arbitration, cited to settled law from the Second Circuit that "*any* limitations defense -- whether stemming from the arbitration agreement, arbitration association rule, or state statute -- is an issue to be addressed by the arbitrators." *See*, <u>Goldman</u>, *supra*,(*citing*, <u>Shearson Lehman Hutton, Inc. v. Wagoner</u>, 944 F.2d 114, 121 (2d Cir. 1991)[("it is up to the arbitrators, not the court, to decide the validity of time-bar defenses",*citing*, <u>Conticommodity Serv. v. Philipp & Lion</u>, 613 F.2d 1222, 1224-25 (2d Cir. 1980))].

36.     Accordingly, the Court should dismiss the Petitioners third and fourth claims for relief since these issues are reserved to the arbitrator under the FAA. *See*, <u>Goldman</u>, *supra*, <u>Shearson</u>, *supra*; *accord*, AAA Commercial Rules 7(a), (b), *supra*.

   *B) Petitioner Waived The Notice Of Claim Statute In The DRC.*

37.     In the alternative, should the Court determine that the limitation type defenses

raised in the Petition may be considered by the Court, PMO urges that the Court find the City has waived the right to assert those statutes by agreeing to the detailed and comprehensive DRC which incorporates by reference the entirety of the Commercial Rules of the AAA.

38.    It is well settled law that a municipality or governmental subdivision as a party to a contract with a private entity can waive by agreement the notice of claim protections afforded by New York Statute. *See*, Davis-Wallbridge v. Syracuse, 71 N.Y.2d 842 (1988).

39.    Courts in New York have not hesitated to find a waiver of the notice of claim statute where such waiver was express or where the procedures set out in the dispute resolution clause of the agreement are plainly inconsistent with the statute. *See, e.g.,* Civil Serv. Emples. Ass'n v. Board of Educ., 230 A.D.2d 703 (2d Dept., 1996); N. Picco & Sons Contr. Co., Inc. v. Board of Ed. of Bronxville Sch., 2006 NY Slip Op 1006 (2d Dept., 2006).

40.    The DRC in the agreement between the City of Middletown and PMO does not expressly waive the statute. However, since the DRC is comprehensive and detailed, incorporating provisions of the FAA and the Commercial Rules of the AAA the procedures set forth in the DRC are "plainly inconsistent with the statute" thus amounting to a waiver. *See, e.g.,* Guilderland Cent. School Dist. v. Guilderland Cent. Teachers Asso., 45 A.D.2d 85, 86 (3d Dept., 1974)[Implied waiver found where contract set forth in elaborate detail step-by-step grievance procedures, nowhere requiring compliance with the statute, and time limitations imposed by the contract for proceeding through the various stages of the grievance procedure are plainly inconsistent with those contained in the statute]; *see also*, Aloi v. Board of Education, 81 A.D.2d 874, 875 (2d Dept., 1981)[*Held*, the agreed upon dispute resolution procedures provide the only notice requirement needed]. Because the City and PMO agreed upon a detailed DRC governed by the FAA and the AAA, the Court should find the City has

waived the notice of claim statutes.

### C. The City Received A De Facto Notice of Claim

41.     In the alternative, should the Court determine that the City has not waived the Notice of Claim statute in the DRC, the City should nevertheless be estopped from invoking the Notice of Claim statute as a defense to the arbitration since it already has a *de facto* notice of claim.

42.     The Notice of Claim Statute requires that the City be provided with a verified writing setting forth: (1) the name and post-office address of each claimant, and of his attorney, if any; (2) the nature of the claim; (3) the time when, the place where and the manner in which the claim arose; and (4) the items of damage or injuries claimed to have been sustained so far as then practicable. *See*, N.Y. C.L.S. Gen. Mun. Law § 50-e (C.L.S., 2007).

43.     The City claims it has not received such information. However, the body of correspondence between the attorneys for the City and PMO's attorneys together with the June 18th, 2007 filing with the AAA clearly establishes that the City had all of the notice it was due well within 90 days of the claim's accrual or at least within a reasonable time thereafter. *See*, Exhibit "F" (August 18th, 2006 Letter from City attorney Michael Murphy, Esq. to PMO attorney David Minkin, Esq.); Exhibit "H" (January 4th, 2007 Letter from Murphy to Minkin); Exhibit "I" (January 5th, 2007 Letter from Minkin to Murphy); Exhibit "J" (January 17th, 2007 Letter from Murphy to Minkin); Exhibit "M" (June 12th, 2007 Letter from Murphy to Minkin)[Wherein the City stated openly, and for the first time, its position that "In closing, it appears that PMO has chosen to go down a path that would violate the fundamental bargain reached in the City/PMO agreements. The City will not tolerate such

open defiance of PMO's basic contractual obligations, and reserves all its rights and remedies thereto."]; Exhibit "A" (June 18th, 2007 AAA filing by PMO setting forth in detail its claims against the City).

44.    The New York State Court of Appeals has recognized what is codified in New York General Municipal Law §50-e(5): that where the municipality (or its attorney or insurance carrier) has obtained within 90 days of the claim's accrual or a reasonable time thereafter 'actual knowledge of the facts underlying the claim' the notice of claim statute will not be a bar absent demonstrated prejudice to the municipal defendant. *See*, Williams v. Nassau County Med. Ctr., 6 N.Y.3d 531(N.Y. 2006).

45.    The City claims in the Petition that the tort and New York State Constitutional claims accrued in January of 2007. Assuming, *arguendo*, this is the case, the correspondence between the City and PMO from January to June together with PMO'S June AAA filing demonstrate the City had, within 90 days or a reasonable time thereafter 'actual knowledge of the facts underlying the claim'.

46.    Finally, it should be noted that PMO does not acquiesce in the City's contention that its claims had fully accrued in January of 2007. Rather, the June 12th, 2007 letter which (for the first time) expressly threatened to terminate the Agreements would be the relevant accrual date. In the alternative, the City's continuing conduct amounts to a toll which, as a continuing harm, tolls the accrual point.

47.    Of course, the arguments raised in sub-parts B) and C) to Point III are secondary and in the alternative and only need be reached by the Court should it determine that it has jurisdiction to reach limitations type issues. The great weight of the authority in the Second Circuit under the FAA reserve this type of issue strictly to the arbitrators.

14

**Point IV:**

**Petitioner's Fifth Claim Must Be Dismissed Since PMO's Section**

**1983 Claims Are Within The Scope Of The DRC And Are Arbitral.**

*A) PMO's Section 1983 Claims are Within the Scope of the DRC.*

48.     The fifth claim for relief in the Petition which seeks to stay and/or dismiss PMO's section 1983 claims on the grounds they are "beyond the scope" of the arbitration clause should be dismissed. *See,* Goldman, *supra; see also,* Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 122 (2d Cir. 1991)[*Held,* unless expressly excluded, it is presumed that claims are arbitral where there is a broad arbitration clause]. The exceedingly broad clause must be presumed under the FAA to embrace PMO's section 1983 claims since they are claims "arising out of or relating to this Agreement or concerning any aspect of performance by the City or the Company (each a Party) under the terms of the Agreement". As set forth at length in the arbitration complaint and in PMO'S counter claims, the section 1983 claims arise from a pattern of unlawful state action on the part of the City which has caused injury to PMO vis-à-vis the waste-to-ethanol plant that is the subject of the Agreement.

49.     Petitioners mistakenly argue that such claims are presumed to be outside the scope of the DRC. However, the FAA and its strong arbitration policy actually presume the opposite. That is, claims are presumed to be in unless specifically excluded. There is no question but that section 1983 claims are not specifically excluded. In any event, Rule 7(a) of the AAA Commercial Rules specifically reserved such issues to the arbitrator. If there is any doubt or question on this point the Court should err on the side of arbitrability and should

permit Judge Bissell as the arbitrator to make such determination in accord with the agreement of the parties to be bound first by the FAA and secondarily by the Commercial Rules of the AAA.

### B) PMO'S Section 1983 Claims Are Arbitral

50.     Likewise, the Petitioner's argument that "public policy" forbids arbitration of section 1983 claims must be rejected. PMO submits that Judge Bissell is particularly suited to decide all of the issues raised by the Petition and certainly those pertinent to PMO's section 1983 claims given his extensive experience on the bench and consideration of perhaps thousands of 1983 cases. The concern that the arbitrator may not be equipped to deal with constitutional issues is without force given that it is known that Judge Bissell will be the arbitrator. The Fifth Claim for Relief should be dismissed in its entirety on that ground alone.

51.     In any event, the authorities cited by Petitioner are without force. The matter of <u>Wertheim & Co. v. Halpert</u>, 48 N.Y.2d 681 (N.Y. 1979) cited by Petitioner, is not in point. In that matter, the Court of Appeals agreed that arbitration of certain civil rights claims should be stayed since a civil action was already in progress in federal court and there was a risk of "inconsistent outcomes". There is no such risk here.

52.     <u>Rogers v. New York Univ.</u>, 220 F.3d 73, 74 (2d Cir. 2000) also cited by Petition is likewise not in point. In that case the Court recognized that a union may not in all instances waive the statutory rights of an individual member. However, the City is certainly capable of agreeing, as it did, to proceed in arbitration on all claims including the statutory 1983 claims raised by PMO in this case. The City and PMO are sophisticated parties who were represented at all times by attorneys. If the City and PMO wished to exclude section 1983 claims from the DRC, specific language to that effect could have been included, it was

not.

53.     The Supreme Court of the United States supersedes the authorities cited by the Petitioner. The Court has held that there is nothing inherently special about statutory civil rights claims that would *per se* exempt them from arbitration. *See*, Desiderio v. NASD, 191 F.3d 198, 204 (2d Cir. 1999)["Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991) states the general principle that arbitration agreements are enforceable with regard to statutory claims, "unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue [as indicated] in the text of the [statute], its legislative history, or an inherent conflict between arbitration and the [statute's] underlying purposes."

54.     The Gilmer Court went on to note that the burden is on the party opposing arbitration to demonstrate "that Congress intended to preclude a waiver of a judicial forum" for statutory claims. *See*, Gilmer, *supra*. The Petition is utterly lacking in that regard and should be dismissed.

55.     The petitioner's argument that arbitration of section 1983 claims would under-cut important rights otherwise protected by the statute was expressly rejected by the U.S. Supreme Court in Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 481 (U.S. 1989):

> By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." 473 U.S., at 628. To the extent that Wilko rested on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants, it has fallen far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes.

Rodriguez de Quijas v. Shearson et al., 490 U.S. 477 (1989).

56.     The Supreme Court has found a series of statutory claims to be arbitrable. *See,*
*e.g.,* Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S. Ct.
3346, 87 L. Ed. 2d 444 (1985) (enforcing an agreement to arbitrate claims arising under the
Sherman Act, 15 U.S.C. §§ 1-7); Shearson/American Express Inc. v. McMahon, 482 U.S.
220, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987)(enforcing an agreement to arbitrate claims
arising under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and claims
arising under the civil provisions of the Racketeer Influenced and Corrupt Organizations Act
(RICO), 18 U.S.C. § 1961 et seq.); Rodriguez de Quijas v. Shearson/American Express, Inc.,
490 U.S. 477, 109 S. Ct. 1917, 104 L. Ed. 2d 526 (1989) (enforcing an agreement to arbitrate
claims arising under § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2)); Gilmer v.
Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991)
(enforcing an agreement to arbitration claims arising under the ADEA); Green Tree Financial
Corp. - Ala. v. Randolph, 531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000) (holding that
arbitration is a suitable forum in which to resolve claims under the Truth in Lending Act).

57.     Research has yielded no case in the Second Circuit which has specifically
passed on the question of whether section 1983 claims are arbitral. However, given the
admonition of Gilmer that the burden of proof in that regard rests with the party opposing
arbitration, it is manifest that the City has failed to meet its burden on the Petition. The City
has not offered any evidence at all of "Congressional  intent to preclude a waiver of judicial
remedies for the statutory rights at issue in the text of the statute or its legislative history",
nor has the City shown an "inherent conflict between arbitration and the [statute's] underlying
purposes." *See, e.g.,* Gilmer, *supra.*

58.    At least one court outside the Second Circuit has found that "it is an unanswered question whether an individual can contract to arbitrate Section 1983 claims in the same way that she can contract to arbitrate statutory claims under [other federal statutes such as] the ADEA, Sherman Act, Securities Act, or Title VII." Tripp v. Renaissance Advantage Charter Sch., 2003 U.S. Dist. LEXIS 19834 (D. Pa. 2003). While the Pennsylvania District Court in Tripp determined under the specific facts of that case that arbitration of section 1983 claims would be inconsistent with the statute's purpose it did so in the context of an unsophisticated individual dealing with an employment contract which the individual had little or no ability to negotiate.

59.    PMO submits that the logic of Tripp does not apply to this case which involves two highly sophisticated entities both of whom were represented by legal counsel before, during and after the negotiation of the Agreements. Rather, since there is no apparent limitation in the text or history of section 1983 which would restrict arbitration and since arbitration of statutory claims has been recognized in a host of other areas by the U.S. Supreme Court, it should be so allowed here. This is particularly so since it is PMO who wishes to voluntarily arbitrate its section 1983 claims. This is not a case, as was Tripp, of a defendant attempting to force a plaintiff into a forum not of its own choosing. PMO seeks to arbitrate all of its claims, including its section 1983 claims per the DRC. This is a case of first impression in the Second Circuit and PMO urges the Court not to follow the limited holding of Tripp; but to adhere to the rule of Gilmer which places the burden on the party challenging arbitration to come forward with proof of Congressional intent or some other abject inconsistency between the underlying purposes of the 1983 statute and the goals advanced by

arbitration and the FAA.[4]

60.     The City is, in reality, attempting to deprive PMO of the benefit of its bargain by seeking to bootstrap its own defenses of qualified immunity (which are moot in any event since the Individuals have been let out of the case) to push the case out of the arbitral forum . Moreover, as noted in <u>Rodriguez de Quijas</u>, *supra*, by arbitrating a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. So, in that regard the City's claim that arbitration will prejudice its ability to defend the section 1983 claims is a red herring and should be ignored by the Court. The City will have the opportunity to interpose every defense available under the statute in the arbitration.

61.     Therefore, since Petitioner has failed to show that the DRC expressly excludes the section 1983 claims and has failed to provide any proof at all that they are non-arbitral, as it must under <u>Gilmer</u>, the Petitioner's fifth claim should be dismissed.

## Conclusion

62.     Based upon the foregoing, PMO respectfully requests that the Petition be dismissed in its entirety, and that it be granted judgment on its counter-claims together with such other and further relief as this Court may deem just, proper and equitable, including the costs and reasonable attorney fees incurred.

---

[4] Incidentally, the term "arbitration" is found no-where in the plain text of section 1983, but the statute does state that the action may be brought at law, in equity or an 'other proper proceeding'. Quite apart from evincing Congressional intent to limit the fora available, the plain text of the statute expresses the intent to expand the fora by the inclusion of the term 'other proper proceeding':

Every person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, **shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress** . . . .

42 U.S.C. §1983(U.S.C.S 2007)(Emphasis Supplied).

TARSHIS, CATANIA, LIBERTH,
MAHON & MILLIGRAM, PLLC


By:_____/s/_____
NICHOLAS A. PASCALE (NP-5766)

Attorneys for Defendant
PENCOR-MASADA OXYNOL, LLC
One Corwin Court
P.O. Box 1479
Newburgh, New York 12550
Tel. No. (845) 565-1100

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
═══════════════════════════════════X

CITY OF MIDDLETOWN, ET AL.,

              Petitioners,              CIVIL NO. 07-6572 (CLB)

-against-

PENCOR MASADA OXYNOL, LLC,

              Respondent.

═══════════════════════════════════X

## MEMORANDUM OF LAW BY PENCOR MASADA OXYNOL, LLC IN OPPOSITION TO THE AFFIRMATION OF THE CITY OF MIDDLETOWN, ET AL. BY MICHAEL G. MURPHY, ESQ. IN SUPPORT OF THE PETITION TO STAY ARBITRATION AND <u>REQUEST FOR TEMPORARY STAY</u>

              Respectfully submitted,

              TARSHIS, CATANIA, LIBERTH,
              MAHON & MILLIGRAM, P.L.L.C.
              Attorneys for PENCOR MASADA OXYNOL, LLC,
              One Corwin Court
              P.O. Box 1479
              Newburgh, New York 12550
              Tel. No. (845) 565-1100

<u>OF COUNSEL:</u>

NICHOLAS A. PASCALE, ESQ. (NP-5766)

## Table of Contents

Title                                                                    Page

Table of Contents................................................................i

Table of Authorities.......................................................... ii

Preliminary Statement...........................................................1

Argument........................................................................4

    POINT I:  THE PETITIONER IMPROPERLY RELIES UPON
             NEW YORK STATE LAW.....................................................4

        A.  THE FEDERAL ARBITRATION ACT CONTROLS................. 4

        B.  FEDERAL LAW STRONGLY FAVORS ARBITRATION...........6

    POINT II:  PETITIONER'S FIRST AND SECOND CLAIMS MUST
             BE DISMISSED SINCE THEY HAVE BEEN RENDERED
             MOOT BY PMO...............................................................8

    POINT III: PETITIONER'S THIRD AND FOURTH CLAIMS MUST BE
             DISMISSED SINCE THE COURT HAS NO JURISDICTION
             TO ENTERTAIN THEM......................................................9

        A.  LIMITATIONS DEFENSES ARE ISSUES FOR THE
           ARBITRATOR..........................................................9

        B.  PETITIONER WAIVED THE NOTICE OF CLAIM
           STATUTE IN THE DRC................................................10

        C.  THE CITY RECEIVED A DE FACTO NOTICE OF CLAIM........11

    POINT IV: PETITIONER'S FIFTH CLAIM MUST BE DISMISSED
             SINCE PMO'S SECTION 1983 CLAIMS ARE WITHIN THE
             SCOPE OF THE DRC AND ARE ARBITRAL...........................13

        A.  PMO'S SECTION 1983 CLAIMS ARE WITHIN THE
           SCOPE OF THE DRC...................................................13

        B.  PMO'S SECTION 1983 CLAIMS ARE ARBITRAL..................14

Conclusion......................................................................18

## Table of Authorities

**Federal Cases**

Desiderio v. NASD, 191 F.3d 198, 204 (2d Cir. 1999)......................................................... 15
Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991)..........................................15, 16
Green Tree Financial Corp. - Ala. v. Randolph, 531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000)............. 16
McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825, 831 (2d Cir. 1988).............. 7
Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S. Ct. 3346,
   87 L. Ed. 2d 444 (1985)................................................................................... 15
Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983)............................. 6, 7
Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 481 (U.S. 1989)...................................... 15, 16, 18
Rogers v. New York Univ., 220 F.3d 73, 74 (2d Cir. 2000)................................................... 14
Shearson Lehman et al v. Wagoner, 944 F.2d 114 (2d Cir. 1991)............................................ 7, 9, 10, 13
Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987)............ 16

**State Cases**

Aloi v. Board of Education, 81 A.D.2d 874, 875 (2d Dept., 1981)............................................ 11
Civil Serv. Emples. Ass'n v. Board of Educ., 230 A.D.2d 703 (2d Dept., 1996)............................... 10
Diamond Waterproofing Sys. v. 55 Liberty Owners Corp., 4 N.Y.3d 247, 253 (N.Y. 2005)....................... 5
Guilderland Cent. School Dist. v. Guilderland Cent. Teachers Asso., 45 A.D.2d 85, 86 (3d Dept., 1974)........... 11
matter of Wertheim & Co. v. Halpert, 48 N.Y.2d 681 (N.Y. 1979).......................................... 14
Davis-Wallbridge v. Syracuse, 71 N.Y.2d 842 (1988)...................................................... 10
Picco & Sons Contr. Co., Inc. v. Board of Ed. of Bronxville Sch., 2006 NY Slip Op 1006 (2d Dept., 2006)........ 10
Williams v. Nassau County Med. Ctr., 6 N.Y.3d 531(N.Y.)................................................12, 13

**Federal Statutes**

15 U.S.C. § 78j(b)........................................................................................... 16
18 U.S.C. § 1961............................................................................................ 16
28 U.S.C. §1441............................................................................................. 3
42 U.S.C. §1983(U.S.C.S 2007)............................................................................ 17
42 U.S.C.S. §1983........................................................................................... 2
42 U.S.C.S. §1988........................................................................................... 2
9 USCS § 2 (USCS 2007).................................................................................... 6
USCS Fed Rules Civ Proc R 81 (USCS 2007)............................................................... 3, 6

**Federal Rules**

AAA Commercial Arbitration Rules 7(a).................................................................... 5
FRCP 81(c)................................................................................................. 3

**State Rules**

Federal Rule of Civil Procedure 81(c)..................................................................... 3

**TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC**
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

## Preliminary Statement

This Memorandum of Law is respectfully submitted in opposition to the petition of the City of Middletown et al. seeking to stay and to dismiss certain PMO claims made in an arbitration proceeding. PMO prays that the Court deny the relief sought in the petition and grant entirely the relief requested in the counter-claims of PMO as set forth in its verified answer, together with such other and further relief as to this Court may seem just, proper, and equitable.

All exhibits referred to herein are those annexed to the City of Middletown Petition removed to this Court and filed herewith unless otherwise identified.

## Parties

The City of Middletown ("City") is a municipal corporation organized and existing under the laws of the State of New York, located in Orange County, New York with an office located at 16 James Street, Middletown, New York.[1]

Pencor-Masada Oxynol, LLC ("PMO") is a Delaware Limited Liability Company with a principal place of business at 2170 Highland Avenue S. Suite 100, Birmingham, Alabama.

## Background and Facts

The facts underlying this matter are set forth at length in the PMO Arbitration Complaint annexed to the City Petition as Exhibit "A" and are also stated in PMO's Answer with Counter-Claim. Rather than re-state the lengthy factual averments here, PMO hereby incorporates its Counter-Claim by reference as though set forth at length herein.

---

[1]  The complaint filed by PMO in the arbitration lists individual members of the City of Middletown Common Council as defendants. The City's Petition, *inter alia*, seeks dismissal of the claims against the individuals in the arbitration. PMO will discontinue, without prejudice, its claims against the individuals in the arbitration. Therefore, the individuals are not identified as parties herein. Only the City remains a defendant in the arbitration and the first two claims for relief made in the Petition (at paragraphs 60-73 of the Petition) vis-à-vis the individual defendants are moot and are not addressed in this submission. Only the third, fourth, and fifth claims for relief are addressed and each must be dismissed.

1

## **Procedural Posture**

On or about June 18th, 2007, PMO, pursuant to the procedures set forth in the dispute resolution clause to the written agreements with the City of Middletown, commenced an arbitration proceeding with the American Arbitration Association (AAA) against the City and certain individual members of the Common Council of the City. A copy of the arbitration filing is annexed as Exhibit "A" to the Petition.

In the arbitration complaint, PMO asserted claims for, *inter alia*, breach of contract, tortious interference with contractual and business relations, violations of the Constitution of the State of New York and violations of PMO's Federal constitutional rights to free political association, due process, and equal protection as applicable to the City under the 14th Amendment and made actionable by 42 U.S.C.S. §1983, together with a claim for attorney fees under 42 U.S.C.S. §1988.

The parties agreed on July 3rd, 2007 that the AAA name the Honorable John W. Bissell, retired Chief Judge of the U.S. District Court, District of New Jersey, as the arbitrator in this case.

Neither the City nor the individual defendants interposed an answer in the arbitration. Accordingly, the City filed a Petition to stay and/or dismiss the arbitration by Order to Show Cause dated July 9th, 2007, and signed by the Hon. Joseph G. Owen, a justice of the New York State Supreme Court for the County of Orange. The petition required an answer and opposition by July 23rd, 2007.

In the Petition, the City sought to have the state court "permanently stay and/or otherwise dismiss" PMO'S claims for tortious interference, its claims under the New York State Constitution and its federal claims under section 1983. Ostensibly, the City seeks to dismiss PMO's tort claims and New York Constitutional law claims on the grounds that they are barred by New York's "Notice of Claim" statute arising under sections 50-e and 50-i of

the New York General Municipal Law. The City seeks to dismiss the section 1983 claims on the grounds that they are "beyond the scope of the arbitration agreement" and "non-arbitral on policy grounds". The Petition did not seek to stay or dismiss arbitration of PMO's contract claims.

On July 23rd, 2007 PMO caused the state court action filed by the City to be removed by duly filed notice of removal to the United States District Court for the Southern District of New York. *See generally*, 28 U.S.C. §1441, et seq.

Federal Rule of Civil Procedure 81(c) states:

> (c) Removed Actions. These rules apply to civil actions removed to the United States district courts from the state courts and govern procedure after removal. Repleading is not necessary unless the court so orders. In a removed action in which the defendant has not answered, the defendant shall answer or present the other defenses or objections available under these rules within 20 days after the receipt through service or otherwise of a copy of the initial pleading setting forth the claim for relief upon which the action or proceeding is based, or within 20 days after the service of summons upon such initial pleading, then filed, or within 5 days after the filing of the petition for removal, whichever period is longest.

USCS Fed Rules Civ Proc R 81 (USCS 2007).

PMO did not file an answer in the state court action nor did it make a motion, request an adjournment of any kind, nor participate in any way in the state court action.

Accordingly, although answering and opposition papers were to be filed in state court by July 23rd, 2007, by operation of FRCP 81(c) the time for PMO to do so is extended by at least 5 days or until July 28th, 2007. *See*, FRCP 81(c).

Nevertheless, it is the express intention of PMO to file its answering and opposition papers with the United States District Court for the Southern District of New York contemporaneously with the filing of its notice of removal on July 23rd, 2007. In the event that PMO is precluded from so doing for what ever reason, PMO respectfully requests the Court recognize the 5 day extension afforded by FRCP 81(c) on filing the notice of removal.

This opposition brief together with PMO's answer filed herewith is now respectfully submitted to this Court in opposition to the City's Petition seeking a stay and dismissal of certain of PMO'S arbitration claims.

## Argument

## Point I:

### The Petitioner Improperly Relies Upon New York State Law

*A) The Federal Arbitration Act Controls.*

The Petitioner improperly relies upon New York State statutes as authority for the relief which it seeks.  It is indisputable that the provisions of the Federal Arbitration Act (FAA) 9 U.S.C. et seq., and the federal cases interpreting same, control dispute resolution under the Agreement between the City and PMO. The underlying Agreement between the City and PMO expressly invokes the FAA. The Agreement contains a detailed and comprehensive Dispute Resolution Clause ("DRC") at Schedule 5 thereof which states in relevant part:

> Any claim, action, dispute, or controversy of any kind arising out of or relating to this Agreement or concerning any aspect of performance by the City or the Company (each a Party) under the terms of the Agreement ("Dispute") shall be resolved by mandatory and binding arbitration administered by the American Arbitration Association ("AAA") pursuant to the Federal Arbitration Act (Title 9 of the United States Code) in accordance with this Agreement and the then applicable Commercial Arbitration Rules of The AAA.

> The parties acknowledge and agree that the transactions evidenced and contemplated hereby involve "commerce" as contemplated in Section 2 of the Federal Arbitration Act.

> If Title 9 of the United States Code is inapplicable to any such dispute for any reason, such arbitration shall be conducted pursuant to this Agreement and the then applicable Commercial Arbitration Rules of the AAA.

*See*, Exhibit "B" annexed to the Petition at Schedule "5"; *see also* Rules 7-(a),(b) of

the AAA which detail the powers of the arbitrator.[2]

Since the parties clearly and unequivocally expressed in the DRC that the FAA

controls dispute resolution, and since the project clearly touches upon commerce, the

Petitioner's resort to Article 75 of the New York Civil Practice Law and Rules and other New

York State Laws is plainly unauthorized under the terms of the Agreement.[3] In any event the

parties further agreed that even if the FAA does not apply for whatever reason, the

Commercial Rules of the AAA will apply. As noted above, <u>AAA Commercial Arbitration</u>

<u>Rules 7(a)</u>,(b) clearly reserve to the arbitrator issues pertinent to jurisdiction and the scope of

the agreement to arbitrate. No where in the Agreement are the New York Civil Practice Law

and Rules cited.

The DRC provision invoking the FAA must be specifically enforced and should not be

disregarded in favor of the State law relied upon by the Petitioner. Quite simply, it is *ultra*

---

[2]    Rules 7(a)&(b) of the AAA Commercial Rules State:

R-7. Jurisdiction

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

[3] There is a divergence between Federal and New York State Courts concerning the inter-play and priority between the Federal Arbitration Act and specific choice of law provisions in dispute resolution clauses. The New York State Court of Appeals has taken the position that where a contract otherwise governed by the FAA also contains a choice of law provision which <u>expressly</u> prefers state law on questions concerning dispute resolution, then, in that event the state law should trump the FAA. *See, e.g.*, <u>Diamond Waterproofing Sys. v. 55 Liberty Owners Corp., 4 N.Y.3d 247, 253 (N.Y. 2005)</u>. In <u>Diamond Waterproofing</u>, the Court found that the talismanic statement that state law controls "enforcement" of the agreement means state law controls arbitral issues as well, notwithstanding that the contract is otherwise governed by the FAA and Federal law. To the contrary, federal courts confronting this sort of issue have come down squarely on the side of applying the FAA even where a choice of law provision may be present. *See, e.g.*, <u>Goldman, Sachs & Co. v. Griffin</u>, 2007 U.S. Dist. LEXIS 36674 (S.D.N.Y. 2007). In this case, there is a choice of law provision that refers to state law at paragraph 16 of Schedule "6". However, the talismanic term "enforcement" is absent. Thus, even under <u>Diamond Waterproofing</u>, the FAA would control. Also, the choice of law clause does not appear in Schedule "5" which is the section concerning dispute resolution thereby evincing a lack of intent that state law should control dispute resolution. Finally, since this is a Federal forum, this Court should follow the Second Circuit precedent cited in <u>Goldman</u> and disregard contrary state law from <u>Diamond</u>.

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479 • NEWBURGH, N.Y. 12551 • (845) 565-1100

*vires* for the Petitioner to invoke State law as it has done in the Petition. The Court should

reject this effort.

Indeed, it is the express statutory command of the FAA that a written provision in a

contract shall be valid, irrevocable, and enforceable. Section 2 of the FAA provides:

> A written provision in any maritime transaction or a contract
> evidencing a transaction involving commerce to settle by
> arbitration a controversy thereafter arising out of such contract or
> transaction, or the refusal to perform the whole or any part thereof,
> or an agreement in writing to submit to arbitration an existing
> controversy arising out of such a contract, transaction, or refusal,
> shall be valid, irrevocable, and enforceable, save upon such
> grounds as exist at law or in equity for the revocation of any
> contract.

9 USCS § 2 (USCS 2007).

### B) Federal Law Strongly Favors Arbitration.

The body of federal law interpreting the strong language of section 2 has taken it to

establish a presumptive preference for the arbitration of disputes. It has been held:

> Section 2 [of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2] is
> a congressional declaration of a liberal federal policy favoring
> arbitration agreements, notwithstanding any state substantive or
> procedural policies to the contrary. The effect of the section is to
> create a body of federal substantive law of arbitrability, applicable
> to any arbitration within the coverage of the Act." Moses H. Cone
> Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1
> (1983)

Goldman et al. v. Griffin, 2007 U.S. Dist. LEXIS 36674, (S.D.N.Y., 2007).

The presumption in favor of arbitration is so strong that where a Court is asked, as

here, to stay arbitration it is restricted to a very limited four part inquiry:

> [A] court asked to stay arbitration has four tasks: First, it must
> determine whether the parties agreed to arbitrate; second, it must
> determine the scope of that agreement; third, if federal statutory
> claims are asserted, it must consider whether Congress intended
> those claims to be nonarbitrable; and fourth, if the court concludes
> that some, but not all, of the claims in the case are arbitrable, it
> must then determine whether to stay the balance of the proceedings
> pending arbitration.

Shearson Lehman et al v. Wagoner, 944 F.2d 114 (2d Cir. 1991)(*emphasis supplied*).

       1) The Parties Clearly Agreed To Arbitrate.

It is not disputed that the City and PMO agreed to arbitrate. The City has not sought,

for instance to stay PMO's contract claims and cannot verily dispute the written DRC in the

Agreement. The first inquiry must be answered in the affirmative.

       2) All Of PMO's Claims Are Within The DRC.

In considering the scope of the agreement the Court should be guided by the following

principles:

> [A]ny doubts concerning the scope of arbitrable issues should be
> resolved in favor of arbitration, whether the problem at hand is the
> construction of the contract language itself or an allegation of
> waiver, delay, or a like defense to arbitrability." Moses H. Cone
> Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 74
> L. Ed. 2d 765, 103 S. Ct. 927 (1983). The scope of the arbitration
> clause implicates the intent of the parties, but doubts regarding that
> intent must also be resolved in favor of arbitrability. McDonnell
> Douglas Fin. Corp. v. Pennsylvania Power & Light Co., 858 F.2d
> 825, 831 (2d Cir. 1988). Again, when the contract contains a
> "broad" arbitration clause, as the one at issue here, that purports "to
> refer all disputes arising out of a contract to arbitration," the strong
> presumption in favor of arbitrability applies with even greater
> force. Id. at 832, (*citing* AT&T Technologies, 475 U.S. at 650).

Shearson Lehman et al v. Wagoner, 944 F.2d 114 (2d Cir. 1991).

The DRC between PMO and the City is exceedingly broad encompassing: "Any

claim, action, dispute, or controversy of any kind arising out of or relating to this Agreement

or concerning any aspect of performance by the City or the Company (each a Party) under the

terms of the Agreement ("Dispute"). *See*, Exhibit "A".

Given the breadth of the Agreement and the overwhelmingly strong preference of

Federal Law for arbitration, there is no question but that the claims asserted by PMO in its

arbitration complaint all fall within the scope of the DRC and are therefore arbitral.

The only claim which the City argues may be outside the scope of the DRC are PMO's federal claims arising under section 1983. However, as discussed below the City's arguments in that regard are insufficient and must fail.

### 3)    PMO'S Statutory Claims Are Arbitral

The City seeks to dismiss PMO's claims arising under section 1983 on the vague and shadowy ground that some un-specified "public policy" bars arbitration of such claims. As set forth below, the City's claims in this regard are insufficient and must fail as a matter of law.

### 4)    The Arbitration Must Proceed Even If Some Of The Claims Are Non-Arbitral.

Even if the Court were to determine that certain of PMO's claims are non-arbitral, there is no sound basis for staying arbitration of those claims which are clearly arbitral. For instance, the City has never requested that PMO's contract claims should be stayed. At a minimum, the temporary restraining order signed by the State Court should be dissolved or modified to permit arbitration of the contract claims to proceed. As a practical matter, the resolution of the contract claims may well have the effect of sharpening the issues and will make prosecution of the remaining non-contract claims more or less critical. Therefore, it is in everyone's best interest that the arbitration of the contract claims proceed without further delay. PMO respectfully requests that the Court, pending consideration of the Petition, modify or dissolve the State Court order to permit arbitration of at least the contract claims to proceed.

## Point II:

## Petitioner's First and Second Claims Must Be Dismissed Since

## They Have Been Rendered Moot By PMO

The complaint filed by PMO in the underlying arbitration lists various individual members of the City of Middletown Common Council as defendants. *See*, Exhibit "A". The

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479   •   NEWBURGH, N.Y. 12551   •   (845) 565-1100

City's Petition, *inter alia*, seeks dismissal of the claims against the individuals in the arbitration. PMO will discontinue, without prejudice, its claims against the individuals in the arbitration. Therefore, the individuals are not identified as parties herein. Only the City remains a defendant in the underlying arbitration and the first two claims for relief made in the Petition (at paragraphs 60-73 of the Petition) vis-à-vis the individual defendants are moot and are not addressed in this submission. Only the third, fourth, and fifth claims for relief are addressed and each must be dismissed.

**Point III**:

**Petitioner's Third and Fourth Claims Must Be Dismissed Since The Court Has No**

**Jurisdiction To Entertain Them.**

*A) Limitations Defenses Are Issues For The Arbitrator.*

Petitioner's third and fourth claims of the Petition are based solely on the New York General Municipal Law and The New York Civil Practice Law and Rules.

However, it is well settled law in the Second Circuit that defenses to arbitration in the nature of a state statute of limitations or other statutory defenses are reserved to the arbitrator to decide. Dismissal of arbitration claims based on a statute of limitations is not one of the four functions allotted to the Court, and thus the Court is without jurisdiction to entertain such a request. *See*, Shearson Lehman et al v. Wagoner, 944 F.2d 114 (2d Cir. 1991).

The matter of Goldman, Sachs & Co. v. Griffin, 2007 U.S. Dist. LEXIS 36674 (SDNY 2007) is on all fours with the issue presented here. In that case, as in this case, a special proceeding was commenced in New York State Court by the party seeking to stay arbitration. *See*, Goldman, *supra.* Likewise, the party resisting the stay application removed the petition to Federal Court and urged that the issues raised by the petition were properly referred to the arbitrator for consideration under the FAA and Federal Law.

The Court, in resolving the question in favor of arbitration, cited to settled law from

the Second Circuit that "*any* limitations defense -- whether stemming from the arbitration

agreement, arbitration association rule, or state statute -- is an issue to be addressed by the

arbitrators." *See*, Goldman, *supra*,(*citing*, Shearson Lehman Hutton, Inc. v. Wagoner, 944

F.2d 114, 121 (2d Cir. 1991)[("it is up to the arbitrators, not the court, to decide the validity

of time-bar defenses",*citing*, Conticommodity Serv. v. Philipp & Lion, 613 F.2d 1222, 1224-

25 (2d Cir. 1980))].

Accordingly, the Court should dismiss the Petitioners third and fourth claims for

relief since these issues are reserved to the arbitrator under the FAA. *See*, Goldman, *supra*,

Shearson, *supra*; *accord*, AAA Commercial Rules 7(a), (b), *supra.*

                *B) Petitioner Waived The Notice Of Claim Statute In The DRC.*

In the alternative, should the Court determine that the limitation type defenses raised

in the Petition may be considered by the Court, PMO urges that the Court find the City has

waived the right to assert those statutes by agreeing to the detailed and comprehensive DRC

which incorporates by reference the entirety of the Commercial Rules of the AAA.

It is well settled law that a municipality or governmental subdivision as a party to a

contract with a private entity can waive by agreement the notice of claim protections afforded

by New York Statute. *See*, Davis-Wallbridge v. Syracuse, 71 N.Y.2d 842 (1988).

Courts in New York have not hesitated to find a waiver of the notice of claim statute

where such waiver was express or where the procedures set out in the dispute resolution

clause of the agreement are plainly inconsistent with the statute. *See, e.g.,* Civil Serv. Emples.

Ass'n v. Board of Educ., 230 A.D.2d 703 (2d Dept., 1996); N. Picco & Sons Contr. Co., Inc.

v. Board of Ed. of Bronxville Sch., 2006 NY Slip Op 1006 (2d Dept., 2006).

The DRC in the agreement between the City of Middletown and PMO does not

expressly waive the statute. However, since the DRC is comprehensive and detailed,

incorporating provisions of the FAA and the Commercial Rules of the AAA the procedures

set forth in the DRC are "plainly inconsistent with the statute" thus amounting to a waiver. *See, e.g.,* Guilderland Cent. School Dist. v. Guilderland Cent. Teachers Asso., 45 A.D.2d 85, 86 (3d Dept., 1974)[Implied waiver found where contract set forth in elaborate detail step-by-step grievance procedures, nowhere requiring compliance with the statute, and time limitations imposed by the contract for proceeding through the various stages of the grievance procedure are plainly inconsistent with those contained in the statute]; *see also,* Aloi v. Board of Education, 81 A.D.2d 874, 875 (2d Dept., 1981)[*Held*, the agreed upon dispute resolution procedures provide the only notice requirement needed]. Because the City and PMO agreed upon a detailed DRC governed by the FAA and the AAA, the Court should find the City has waived the notice of claim statutes.

### C. The City Received A De Facto Notice of Claim

In the alternative, should the Court determine that the City has not waived the Notice of Claim statute in the DRC, the City should nevertheless be estopped from invoking the Notice of Claim statute as a defense to the arbitration since it already has a *de facto* notice of claim.

The Notice of Claim Statute requires that the City be provided with a verified writing setting forth: (1) the name and post-office address of each claimant, and of his attorney, if any; (2) the nature of the claim; (3) the time when, the place where and the manner in which the claim arose; and (4) the items of damage or injuries claimed to have been sustained so far as then practicable. *See,* N.Y. C.L.S. Gen. Mun. Law § 50-e (C.L.S., 2007).

The City claims it has not received such information. However, the body of correspondence between the attorneys for the City and PMO's attorneys together with the June 18th, 2007 filing with the AAA clearly establishes that the City had all of the notice it was due well within 90 days of the claim's accrual or at least within a reasonable time thereafter. *See,* Exhibit "F" (August 18th, 2006 Letter from City attorney Michael Murphy,

Esq. to PMO attorney David Minkin, Esq.); Exhibit "H" (January 4th, 2007 Letter from Murphy to Minkin); Exhibit "I" (January 5th, 2007 Letter from Minkin to Murphy); Exhibit "J" (January 17th, 2007 Letter from Murphy to Minkin); Exhibit "M" (June 12th, 2007 Letter from Murphy to Minkin)[Wherein the City stated openly, and for the first time, its position that "In closing, it appears that PMO has chosen to go down a path that would violate the fundamental bargain reached in the City/PMO agreements. The City will not tolerate such open defiance of PMO's basic contractual obligations, and reserves all its rights and remedies thereto."]; Exhibit "A" (June 18th, 2007 AAA filing by PMO setting forth in detail its claims against the City).

The New York State Court of Appeals has recognized what is codified in New York General Municipal Law §50-e(5): that where the municipality (or its attorney or insurance carrier) has obtained within 90 days of the claim's accrual or a reasonable time thereafter 'actual knowledge of the facts underlying the claim' the notice of claim statute will not be a bar absent demonstrated prejudice to the municipal defendant. *See*, Williams v. Nassau County Med. Ctr., 6 N.Y.3d 531(N.Y. 2006).

The City claims in the Petition that the tort and New York State Constitutional claims accrued in January of 2007. Assuming, *arguendo*, this is the case, the correspondence between the City and PMO from January to June together with PMO'S June AAA filing demonstrate the City had, within 90 days or a reasonable time thereafter 'actual knowledge of the facts underlying the claim'.

Finally, it should be noted that PMO does not acquiesce in the City's contention that its claims had fully accrued in January of 2007. Rather, the June 12th, 2007 letter which (for the first time) expressly threatened to terminate the Agreements would be the relevant accrual date. In the alternative, the City's continuing conduct amounts to a toll which, as a continuing harm, tolls the accrual point.

Of course, the arguments raised in sub-parts B) and C) to Point III are secondary and in the alternative and only need be reached by the Court should it determine that it has jurisdiction to reach limitations type issues. The great weight of the authority in the Second Circuit under the FAA reserve this type of issue strictly to the arbitrators.

**Point IV:**

**Petitioner's Fifth Claim Must Be Dismissed Since PMO's Section**

**1983 Claims Are Within The Scope Of The DRC And Are Arbitral.**

*A) PMO's Section 1983 Claims are Within the Scope of the DRC.*

The fifth claim for relief in the Petition which seeks to stay and/or dismiss PMO's section 1983 claims on the grounds they are "beyond the scope" of the arbitration clause should be dismissed. *See*, Goldman, *supra*; *see also*, Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 122 (2d Cir. 1991)[*Held*, unless expressly excluded, it is presumed that claims are arbitral where there is a broad arbitration clause]. The exceedingly broad clause must be presumed under the FAA to embrace PMO's section 1983 claims since they are claims "arising out of or relating to this Agreement or concerning any aspect of performance by the City or the Company (each a Party) under the terms of the Agreement". As set forth at length in the arbitration complaint and in PMO'S counter claims, the section 1983 claims arise from a pattern of unlawful state action on the part of the City which has caused injury to PMO vis-à-vis the waste-to-ethanol plant that is the subject of the Agreement.

Petitioners mistakenly argue that such claims are presumed to be outside the scope of the DRC. However, the FAA and its strong arbitration policy actually presume the opposite. That is, claims are presumed to be in unless specifically excluded. There is no question but that section 1983 claims are not specifically excluded. In any event, Rule 7(a) of the AAA Commercial Rules specifically reserved such issues to the arbitrator. If there is any doubt or

13
**TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC**
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

question on this point the Court should err on the side of arbitrability and should permit Judge Bissell as the arbitrator to make such determination in accord with the agreement of the parties to be bound first by the FAA and secondarily by the Commercial Rules of the AAA.

### B) PMO'S Section 1983 Claims Are Arbitral

Likewise, the Petitioner's argument that "public policy" forbids arbitration of section 1983 claims must be rejected. PMO submits that Judge Bissell is particularly suited to decide all of the issues raised by the Petition and certainly those pertinent to PMO's section 1983 claims given his extensive experience on the bench and consideration of perhaps thousands of 1983 cases. The concern that the arbitrator may not be equipped to deal with constitutional issues is without force given that it is known that Judge Bissell will be the arbitrator. The Fifth Claim for Relief should be dismissed in its entirety on that ground alone.

In any event, the authorities cited by Petitioner are without force. The matter of Wertheim & Co. v. Halpert, 48 N.Y.2d 681 (N.Y. 1979) cited by Petitioner, is not in point. In that matter, the Court of Appeals agreed that arbitration of certain civil rights claims should be stayed since a civil action was already in progress in federal court and there was a risk of "inconsistent outcomes". There is no such risk here.

Rogers v. New York Univ., 220 F.3d 73, 74 (2d Cir. 2000) also cited by Petition is likewise not in point. In that case the Court recognized that a union may not in all instances waive the statutory rights of an individual member. However, the City is certainly capable of agreeing, as it did, to proceed in arbitration on all claims including the statutory 1983 claims raised by PMO in this case. The City and PMO are sophisticated parties who were represented at all times by attorneys. If the City and PMO wished to exclude section 1983 claims from the DRC, specific language to that effect could have been included, it was not.

The Supreme Court of the United States supersedes the authorities cited by the

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

Petitioner. The Court has held that there is nothing inherently special about statutory civil rights claims that would *per se* exempt them from arbitration. *See*, Desiderio v. NASD, 191 F.3d 198, 204 (2d Cir. 1999)["Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991) states the general principle that arbitration agreements are enforceable with regard to statutory claims, "unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue [as indicated] in the text of the [statute], its legislative history, or an inherent conflict between arbitration and the [statute's] underlying purposes."

The Gilmer Court went on to note that the burden is on the party opposing arbitration to demonstrate "that Congress intended to preclude a waiver of a judicial forum" for statutory claims. *See*, Gilmer, *supra.* The Petition is utterly lacking in that regard and should be dismissed.

The petitioner's argument that arbitration of section 1983 claims would under-cut important rights otherwise protected by the statute was expressly rejected by the U.S. Supreme Court in Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 481 (U.S. 1989):

> By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." 473 U.S., at 628. To the extent that Wilko rested on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants, it has fallen far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes.

Rodriguez de Quijas v. Shearson et al., 490 U.S. 477 (1989).

The Supreme Court has found a series of statutory claims to be arbitrable. *See, e.g.*, Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985) (enforcing an agreement to arbitrate claims arising under the Sherman

15

Act, 15 U.S.C. §§ 1-7); Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987)(enforcing an agreement to arbitrate claims arising under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and claims arising under the civil provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq.); Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 109 S. Ct. 1917, 104 L. Ed. 2d 526 (1989) (enforcing an agreement to arbitrate claims arising under § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2)); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991) (enforcing an agreement to arbitration claims arising under the ADEA); Green Tree Financial Corp. - Ala. v. Randolph, 531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000) (holding that arbitration is a suitable forum in which to resolve claims under the Truth in Lending Act).

Research has yielded no case in the Second Circuit which has specifically passed on the question of whether section 1983 claims are arbitral. However, given the admonition of Gilmer that the burden of proof in that regard rests with the party opposing arbitration, it is manifest that the City has failed to meet its burden on the Petition. The City has not offered any evidence at all of "Congressional intent to preclude a waiver of judicial remedies for the statutory rights at issue in the text of the statute or its legislative history", nor has the City shown an "inherent conflict between arbitration and the [statute's] underlying purposes." See, e.g., Gilmer, supra.

At least one court outside the Second Circuit has found that "it is an unanswered question whether an individual can contract to arbitrate Section 1983 claims in the same way that she can contract to arbitrate statutory claims under [other federal statutes such as] the ADEA, Sherman Act, Securities Act, or Title VII." Tripp v. Renaissance Advantage Charter Sch., 2003 U.S. Dist. LEXIS 19834 (D. Pa. 2003). While the Pennsylvania District Court in Tripp determined under the specific facts of that case that arbitration of section 1983 claims

would be inconsistent with the statute's purpose it did so in the context of an unsophisticated individual dealing with an employment contract which the individual had little or no ability to negotiate.

PMO submits that the logic of <u>Tripp</u> does not apply to this case which involves two highly sophisticated entities both of whom were represented by legal counsel before, during and after the negotiation of the Agreements. Rather, since there is no apparent limitation in the text or history of section 1983 which would restrict arbitration and since arbitration of statutory claims has been recognized in a host of other areas by the U.S. Supreme Court, it should be so allowed here. This is particularly so since it is PMO who wishes to voluntarily arbitrate its section 1983 claims. This is not a case, as was <u>Tripp</u>, of a defendant attempting to force a plaintiff into a forum not of its own choosing. PMO seeks to arbitrate all of its claims, including its section 1983 claims per the DRC. This is a case of first impression in the Second Circuit and PMO urges the Court not to follow the limited holding of <u>Tripp</u>; but to adhere to the rule of <u>Gilmer</u> which places the burden on the party challenging arbitration to come forward with proof of Congressional intent or some other abject inconsistency between the underlying purposes of the 1983 statute and the goals advanced by arbitration and the FAA.[4]

The City is, in reality, attempting to deprive PMO of the benefit of its bargain by seeking to bootstrap its own defenses of qualified immunity (which are moot in any event since the Individuals have been let out of the case) to push the case out of the arbitral forum .

---

[4] Incidentally, the term "arbitration" is found no-where in the plain text of section 1983, but the statute does state that the action may be brought at law, in equity or an 'other proper proceeding'. Quite apart from evincing Congressional intent to limit the fora available, the plain text of the statute expresses the intent to expand the fora by the inclusion of the term 'other proper proceeding':

Every person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, <u>**shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress**</u> . . . .

<u>42 U.S.C. §1983(U.S.C.S 2007)</u>(Emphasis Supplied).

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479 • NEWBURGH, N.Y. 12551 • (845) 565-1100

Moreover, as noted in Rodriguez de Quijas, *supra*, by arbitrating a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. So, in that regard the City's claim that arbitration will prejudice its ability to defend the section 1983 claims is a red herring and should be ignored by the Court. The City will have the opportunity to interpose every defense available under the statute in the arbitration.

Therefore, since Petitioner has failed to show that the DRC expressly excludes the section 1983 claims and has failed to provide any proof at all that they are non-arbitral, as it must under Gilmer, the Petitioner's fifth claim should be dismissed.

### Conclusion

Based upon the foregoing, PMO respectfully requests that the Petition be dismissed in its entirety, and that it be granted judgment on its counter-claims together with such other and further relief as this Court may deem just, proper and equitable, including the costs and reasonable attorney fees incurred.

TARSHIS, CATANIA, LIBERTH,
MAHON & MILLIGRAM, PLLC

By:
NICHOLAS A. PASCALE (NP-5766)
Attorneys for Defendant
PENCOR-MASADA OXYNOL, LLC
One Corwin Court
P.O. Box 1479
Newburgh, New York 12550
Tel. No. (845) 565-1100