UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
==================================X

CITY OF MIDDLETOWN, ET AL.,

                Petitioners,               CIVIL NO. 07-6572 (CLB)

-against-

PENCOR MASADA OXYNOL, LLC,

                Respondent.

==================================X

**MEMORANDUM OF LAW BY PENCOR MASADA OXYNOL, LLC IN OPPOSITION
TO THE MOTION OF THE CITY OF MIDDLETOWN, ET AL. TO REMAND THE
PETITION TO STATE COURT AND TO STRIKE THE DECLARATION OF
NICHOLAS A. PASCALE, ESQ. IN OPPOSITION TO THE PETITION**

                Respectfully submitted,

                TARSHIS, CATANIA, LIBERTH,
                MAHON & MILLIGRAM, P.L.L.C.
                Attorneys for PENCOR MASADA OXYNOL, LLC,
                One Corwin Court
                P.O. Box 1479
                Newburgh, New York 12550
                Tel. No. (845) 565-1100

OF COUNSEL:

NICHOLAS A. PASCALE, ESQ. (NP-5766)

## Table of Contents

Title                                                                                                    Page

Table of Contents…………………………………………………………………………i

Table of Authorities………………………………………………………………… ii, iii

Preliminary Statement…………………………………………………………………..1

Argument and Summary of the Argument……………………………………………..2

POINT I: THERE IS NO WAIVER OF PMO'S STATUTORY
RIGHT TO REMOVAL UNDER THE AGREEMENTS……………………………4

    A.  THE PETITION IS OUTSIDE THE SCOPE OF THE
        VENUE CLAUSE IN THE AGREEMENT……………………………4

    B.  THERE IS NO "CLEAR AND UNEQUIVOCAL" WAIVER…………7

POINT II: THIS COURT HAS SUBJECT MATTER JURISDICTION
OVER THIS CASE AND THE CITY'S ARGUMENTS TO THE
CONTRARY MUST BE REJECTED…………………………………………………13

    A. DIVERSITY JURISDICTION EXISTS BECAUSE THERE
    IS COMPLETE DIVERSITY AMONG THE PARTIES AND
    BECAUSE THE AMOUNT IN CONTROVERSY IN THE
    UNDERLYING ARBITRATION COMPLAINT BY PMO
    FAR EXCEEDS $75,000.00………………………………………………… 13

    B. THE UNDERLYING PETITION RAISES A FEDERAL
    QUESTION IN THAT THE ULTIMATE DISPOSITION OF
    THE MATTER NECESSARILY DEPENDS ON RESOLUTION
    OF SUBSTANTIAL QUESTIONS OF FEDERAL LAW………………..17

POINT III: THE LAW DECLARATION FILED WITH THE
NOTICE OF REMOVAL BY COUNSEL FOR PMO IS PROPER
AND SHOULD NOT BE STRICKEN. ALTERNATIVELY, A
MEMORANDUM OF LAW IS FILED HEREWITH WHICH MAKES
MOOT THE CITY'S REQUEST TO STRIKE. FINALLY, THE CITY HAS
FULLY SUBMITTED ITS ARGUMENTS ON THE MERITS OF THE
PETITION AND HAS NO RIGHT TO FURTHER BRIEFING OF THE
ISSUES RAISED IN THE PETITION……………………………………………21

Conclusion…………………………………………………………………………….24

## Table of Authorities

**Federal Cases**

American Bankers Life Assurance Co. v. Evans, 319 F.3d 907 (7th Cir. 2003)............................ 15

America's Money Line, Inc. v. Coleman, 360 F.3d 782, 786 (7th Cir. 2004) ........................ 14, 17

Anselmo v. Univision Station Group, Inc., 1993 U.S. Dist. LEXIS 428, No. 92 Civ. 1471(RLC),
      1993 WL 17173, at *1 (S.D.N.Y. Jan. 15, 1993)................................................................. 4, 5

Armco Inc. v. North Atl. Ins. Co., 68 F. Supp. 2d 330, 338 (S.D.N.Y. 1999) ................................ 5

Barbara v. New York Stock Exch., Inc., 99 F.3d 49, 54 (2d Cir. 1996)....................................... 18

City of New York v. Pullman Inc., 477 F. Supp. 438 (S.D.N.Y. 1979) .............................. 7, 8, 10

Congress Fin. v. Bortnick, 2000 U.S. Dist. Lexis 15750 (S.D.N.Y. 2000)......................11, 12

Cowan v. Windeyer, 795 F. Supp. 535, 538 (N.D.N.Y. 1992)..................................................... 14

Cronin v. Family Educ. Co., 105 F. Supp. 2d 136 (E.D.N.Y. 2000).................................. 7, 10, 12

Davenport v. Procter & Gamble Mfg. Co., 241 F.2d 511, 514 (2d Cir. 1957)................ 14, 17, 18

Dawson v. Fitzgerald, 1999 U.S. App. Lexis 20260 (10th Cir. 1999)............................... 12

Doctor's Assocs. v. Hamilton, 150 F.3d 157, 160 (2d Cir. 1998)............................ 14, 16, 17, 18

Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (U.S. 1991) ........................................... 20

Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 25 (2d Cir. 2000)................................. 18, 19, 20

Greenblatt v. Delta Plumbing & Heating Corp., 68 F.3d 561, 570 (2d Cir. 1995)..................... 19

Hough v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 757 F. Supp. 283, 286
      (S.D.N.Y. 1991)........................................................................................................... 14, 17

Karl Koch Erecting Co. v. New York Convention Center Dev. Corp., 838 F.2d 656, 659
      (2d Cir. 1988)..................................................................................................................... 9

Kheel v. Port of New York Authority, 457 F.2d 46, 49 (2d Cir. 1972)....................................... 13

Lindahl v. Office of Personnel Management, 470 U.S. 768, 793 n.30, 84 L. Ed. 2d 674, 105 S.
      Ct. 1620 (1985)................................................................................................................. 11

Maxons Restorations, Inc. v. Newman, 292 F. Supp. 2d 477, 480 (S.D.N.Y. 2003) ................... 14

Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 808-09, 92 L. Ed. 2d 650,
      106 S. Ct. 3229 (1986).................................................................................................. 11, 19

Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 167-68, 84 L. Ed. 167,
      60 S. Ct. 153 (1939)........................................................................................................... 11

Nissho-Iwai American Corp. v. Kline, 845 F.2d 1300, 1304 (5th Cir. 1988) ........................ 23, 24

Oklahoma Retail Grocers Asso. v. Wal-Mart Stores, Inc., 605 F.2d 1155, 1160
      (10th Cir. 1979)................................................................................................................. 15

Ondova Ltd. Co. v. Maila Indus., 2007 U.S. Dist. Lexis 46080 (N.D. Tex., 2007).................12

Paduano & Weintraub LLP v. Wachovia Secs, 185 F. Supp. 2d 330 (S.D.N.Y. 2002) .............. 15

Rabbi Jacob Joseph Sch. v. Province of Mendoza, 342 F. Supp. 2d 124 (E.D.N.Y. 2004) ....... 7, 8

Snapper, Inc. v. Redan, 171 F.3d 1249 (11th Cir. 1999)...................................................... 11, 12

United States Steel Corp. v. Turner Constr. Co., 560 F. Supp. 871 (S.D.N.Y. 1983)................... 6

Unity Creations, Inc. v. Trafcon Indus., 137 F. Supp. 2d 108 (E.D.N.Y. 2001) ........................... 7

U.S. App. LEXIS 20260 (10th Cir. 1999) .................................................................................. 12

West 14th St. Commercial Corp. v. 5 West 14th Owners Corp., 815 F.2d 188, 193
      (2d Cir. 1987)..................................................................................................................... 19

**Federal Statutes**

28 U.S.C. § 1332(a) .................................................................................................................... 14

28 U.S.C. § 1450.................................................................................................................. 23, 24

28 U.S.C. §1331....................................................................................................................... 3

**TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC**
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

28 U.S.C. §1332 ........................................................................................................................... 3

28 U.S.C. §1441 ...................................................................................................................... 2, 7

42 U.S.C. §1983 ........................................................................................................................... 3

Federal Arbitration Act 9 U.S.C. §1 .......................................................................................... 3

**Federal Rules**

FRCP 81(c) ................................................................................................................................ 23

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479 • NEWBURGH, N.Y. 12551 • (845) 565-1100

**Preliminary Statement**

This Memorandum of Law is respectfully submitted by Respondent-Plaintiff[1] PENCOR

MASADA OXYNOL, LLC ("PMO") in opposition to the motion of Petitioners-Defendants

CITY OF MIDDLETOWN, ET AL. ("CITY"), to remand the Petition to the Supreme Court for

the State of New York, County of Orange and to strike the Law Declaration of Nicholas A.

Pascale, Esq. filed with the Notice of Removal. As set forth herein, the relief requested by the

CITY must be denied in its entirety since it is without basis in the law or the facts.

Procedural History

A brief "procedural history" is supplied by the CITY in its August 10th, 2007

Memorandum of Law filed in support of the instant motion. For the purposes of this motion only,

PMO adopts the "procedural history" set forth by the CITY with certain exceptions set forth

herein. Specifically, it should be noted that the Petition filed by the CITY expressly purports to

seek a permanent stay of and/or the dismissal of certain of PMO'S arbitration claims including

PMO'S claims under the Federal Constitution and Federal Statutes. On this point there can be no

dispute as the Petition speaks for itself, statements to the contrary in the CITY'S Memorandum

of Law notwithstanding.

Factual Allegations

The CITY'S Memorandum of Law also purports to lay out certain factual allegations

pertaining to the Agreements with PMO which are, *inter alia*, the subject of the underlying

Arbitration between the CITY and PMO. It is respectfully submitted that the inclusion of these

non-evidentiary factual allegations is beyond the scope of and not necessary to the resolution of

---

[1]    Although the CITY has styled the parties as "Plaintiff" and "Defendant" it seems truer and perhaps less
confusing to retain the appellations of "Petitioners" for the CITY parties and "Respondent" for PMO, since this
matter remains a special proceeding and is not a plenary action. This is doubly appropriate since PMO is Plaintiff
and the CITY parties Defendants in the underlying Arbitration which the CITY parties seek to stay and/or dismiss in
their Petition. Thus, the CITY can best be thought of as "Petitioner-Defendants" and PMO as "Respondent-
Plaintiff".

1

the limited issues presented on this motion to remand. Nevertheless, for the purposes of this motion only PMO stipulates to the authenticity of the document copies annexed to the August 10th, 2007 Declaration of Michael G. Murphy, Esq. (Exhibits 1 [A-M] and 2). However, PMO expressly rejects and denies the non-evidentiary factual allegations and characterizations of the CITY in its Memorandum of Law. Exhibits referred to herein are either those annexed to the Murphy Declaration or those submitted with the Declaration of Nicholas A. Pascale, Esq. filed on even date herewith.

### Argument

#### Summary of Argument

##### A. The Motion to Remand Should Be Denied

The prong of the CITY'S motion seeking a remand of this matter to New York State Supreme Court, Orange County must be denied as PMO did not as a matter of law, waive its statutory right to remove the Petition and because this Court has subject matter jurisdiction over the Petition.

First, the Petition in the nature of a special proceeding to stay and/or dismiss the PMO Arbitration claims is outside the scope of the "Venue" clause relied upon by the CITY. Thus, the CITY may not rely on the clause, as it does, to argue that PMO was waived its statutory right to removal in the specific context of this special proceeding.

Second, even if this matter is within the "Venue" clause then in that general context PMO has not waived its statutory right to removal. It is well settled law in the Second Circuit that waiver of a party's statutory right to remove a case to federal court must be both "clear" and "unequivocal". It is plain that there is no such "clear and unequivocal" waiver by PMO. The removal statute (28 U.S.C. §1441) is not expressly mentioned in the Agreements, nor is the Supreme Court of the State of New York, County of Orange or any other court particularly

identified as the sole and exclusive forum in the Agreements. Finally, the Agreements contemplate litigation of all disputes to be carried out in Arbitration as evidenced by specific super-ceding language in the Agreements to that effect.

Third, this Court has so-called diversity jurisdiction (28 U.S.C. §1332) over the matter since there is complete diversity of citizenship between the parties and since the claims asserted by PMO in the underlying arbitration clearly exceed the statutory amount in controversy (28 U.S.C. §1332). The CITY misses the mark by arguing that the statutory amount in controversy is determined by the injunctive and equitable nature of the relief sought in the Petition to stay and/or dismiss certain of the Arbitration claims asserted by PMO. It is well settled law in the Second Circuit that when analyzing whether the statutory amount in controversy element of diversity jurisdiction has been met in the context of petitions to stay arbitration, such as the one at bar, it is the underlying arbitration complaint (where PMO is the Plaintiff) rather than the petition to stay arbitration (where the CITY is the Petitioner) to which a Court must look.

Fourth, there is so-called federal question jurisdiction (28 U.S.C. §1331) over the matter since the Petition filed by the CITY expressly purports to seek a permanent stay of and/or the dismissal of certain of PMO'S arbitration claims including PMO'S claims under the Federal Constitution and Federal Statutes. On this point there can be no dispute as the Petition speaks for itself, statements to the contrary in the CITY'S Memorandum of Law notwithstanding.

There are important issues of significance to the development of federal law raised in the Petition not the least of which is whether arbitration of claims asserted under Section 1983 is ever appropriate on public policy grounds. Of necessity this claim involves resolution of substantial federal questions as to, *inter alia*, the interpretation of 42 U.S.C. §1983, provisions of the Federal Arbitration Act 9 U.S.C. §1 et seq. which govern the underlying dispute between the CITY

and PMO, as well as broader questions of federal common law, Congressional intent and federal policy which a federal court is better suited to address than a New York State court.

### B. The Motion To Strike the Pascale Law Declaration Should Be Denied.

The prong of the motion seeking to strike the Pascale Law Declaration filed contemporaneously with PMO'S Notice of Removal should be denied as the Pascale Law Declaration was a proper and equivalent opposition to the Law Affirmation filed by the CITY with the Petition. Alternatively, the motion of the CITY to strike is hereby made moot because PMO compliments the Law Declaration which is hereby resubmitted in the form of a Declaration and Memorandum of Law.

In either event the City has no right to file a reply brief as its arguments in support of the Petition had been fully submitted to the State Court when the Notice of Removal was filed. Of course, should this Court feel that further briefing of some or all of the issues raised in the Petition and PMO'S opposition thereto could assist the Court then PMO will be guided accordingly.

### POINT I:

### THERE IS NO WAIVER OF PMO'S STATUTORY RIGHT TO REMOVAL UNDER THE AGREEMENTS

#### A. THE PETITION IS OUTSIDE THE SCOPE OF THE VENUE CLAUSE IN THE AGREEMENT

As a predicate to the use of the "Venue" clause relied upon by the CITY to establish that PMO has by written agreement expressly waived the statutory right to removal it must first be shown that the matter removed, i.e. the Petition, is within the scope of the "Venue" clause. *See, e.g.,* Anselmo v. Univision Station Group, Inc., 1993 U.S. Dist. LEXIS 428, No. 92 Civ. 1471(RLC), 1993 WL 17173, at *1 (S.D.N.Y. Jan. 15, 1993)["In order to enforce a forum

selection clause, the court must first determine whether the plaintiff's claims are ones contemplated under the terms of the clause."].

It has been held that "the applicability of a forum selection clause is governed by 'objective consideration of the language' of the clause." Armco Inc. v. North Atl. Ins. Co., 68 F. Supp. 2d 330, 338 (S.D.N.Y. 1999) (*citing*, Anselmo, *supra*).

The "Venue" clause relied upon by the City is recited in Schedule "6" to the City Waste Management Services Agreement, entitled 'General Contract Conditions':

> The Company and the City hereby agree that any action, suit, or proceeding arising out of this Agreement or any transaction contemplated hereby shall be brought in a court of competent jurisdiction in the State, and that neither the Company nor the City shall object to the institution or maintenance of any such action, suit or proceeding in such court based upon improper venue, forum non conveniens or any other ground relating to the appropriate forum for such action, suit or proceeding. **Notwithstanding the foregoing, the provisions of Schedule 5 shall govern and control.**

*See*, Exhibit 1-B to Murphy Declaration at page 6-12, paragraph 17 (emphasis supplied).

Thus it is clear, "by objective consideration of the language" that the general condition set forth in paragraph 17 of Schedule 6 is by express agreement of the parties completely superseded, governed and controlled by the specific terms of Schedule 5 to the Agreement. The language relied on by the CITY simply does not control. More to the point, whatever it may be under the sun that survives the annihilating language of the final sentence, if anything at all, this Petition is not such a creature. Rather, Schedule 5 to the Agreement clearly controls.

Schedule 5 is entitled "Dispute Resolution" and largely focuses on the agreement of the parties that all claims, actions, disputes or controversies of any kind arising out of or relating to the Agreement or concerning any aspect of performance under the Agreement between them will be resolved by mandatory and binding arbitration administered by the American Arbitration

Association ("the AAA") pursuant to the Federal Arbitration Act. *See,* Exhibit 1-B to Murphy Declaration at pages 5-1, 5-2.

Notably, Schedule "5" authorizes only one species of court action out side of Arbitration and contains no limitation on the right to removal nor does it designate any particular court as being a mandatory or exclusive forum which one party may elect and by being the first to file, impose on the other.

Section 1(c) to Schedule 5 provides without reference to venue, forum or location that:

> Any Party may bring summary proceedings (including, without limitation, a plea in abatement or motion to stay further proceedings) in court to compel arbitration of any Dispute in accordance with this Agreement.

*See,* Exhibit 1-B to Murphy Declaration at page 5-1, paragraph 1(c).

The CITY concedes that the subject Petition filed in state court which PMO duly removed to this Court is in essence a summary or a special proceeding to stay arbitration and dismiss certain claims brought by PMO in the Arbitration.[2] The Petition, then, is clearly governed by Schedule "5" to the exclusion of Schedule "6".

There is no mention of removal or of state court or federal court in Schedule "5". Since Schedule "6" by its own terms is foreclosed by the terms of Schedule "5" which contains no forum selection clause the CITY'S reliance on Schedule "6" is wholly inappropriate and without force. *Cf.,* United States Steel Corp. v. Turner Constr. Co., 560 F. Supp. 871 (S.D.N.Y. 1983) [Brieant, USDJ](Presenting an analogous case where in the Court declined to apply a forum selection clause contained in conditions to a general contract where the dispute resolution clause of a sub-contract was silent on the matter). According to Section 1(c) of Schedule "5" "Any Party" may bring a summary proceeding (which is what the Petition is) "in court". There is

---

[2]     This assumes that the Petition filed by the CITY is even permissible under Schedule 5 since it expresses permission to file only applications to compel (as opposed to stay and/or dismiss) an Arbitration. Assuming, arguedo, that the Petition is authorized under the agreement, it is controlled exclusively by the terms of Schedule 5.

plainly no restriction in Schedule "5" of the statutory right to remove such a proceeding filed in State Court to a Federal Court. The motion should be denied because the Petition is outside the scope of the Schedule "6", and because Schedule "5" controls.

### B. THERE IS NO "CLEAR AND UNEQUIVOCAL" WAIVER.

Even if the Petition is within the scope of the "Venue" clause in Schedule 6, the motion to remand must fail nevertheless since there is no "clear and unequivocal" waiver of the statutory right to remove a case to federal court.

The CITY relies upon the matter of Rabbi Jacob Joseph Sch. v. Province of Mendoza, 342 F. Supp. 2d 124 (E.D.N.Y. 2004) [Glasser, USDJ] as support for the proposition that waiver of the statutory right to remove a case to federal court may be found where there is explicit language evidencing the waiver. See, City Memorandum of Law at Page 9.

PMO agrees whole heartedly with the statement of law by the CITY that waiver of a party's statutory right to remove a case to federal court under 28 U.S.C. §1441 must be explicit, or in the exact words of the case relied upon by the CITY "clear and unequivocal". See, e.g., Rabbi Jacob Joseph Sch., supra ["It is well established in this Circuit that waiver of a party's statutory right to remove a case to federal court must be clear and unequivocal."], see also, Eklecco L.L.C. v. Rainforest Cafe, Inc., 2002 U.S. Dist. LEXIS 11484 (N.D.N.Y. 2002); Unity Creations, Inc. v. Trafcon Indus., 137 F. Supp. 2d 108 (E.D.N.Y. 2001)[It is "well-recognized that waiver of a party's statutory right to remove a case to federal court must be clear and unequivocal"]; Cronin v. Family Educ. Co., 105 F. Supp. 2d 136 (E.D.N.Y. 2000); City of New York v. Pullman Inc., 477 F. Supp. 438 (S.D.N.Y. 1979).

The trouble with the position taken by the CITY on this motion is that the so-called "Venue" clause in the City Waste Management Services Agreement ("Agreement") contains no

clear and unequivocal term either specifically waiving removal or specifically restricting venue to the Supreme Court, State of New York, County of Orange.

A brief analysis of the two cases chiefly relied upon by the City is useful here. *See*, Rabbi Jacob Joseph Sch., *supra* and Eklecco L.L.C., *supra*.

In Rabbi Jacob Joseph School the Court denied a motion to remand because the "forum selection clause" therein did not contain any specific reference to removal. *See*, Id, *citing to* Elliott Assocs., L.P. v The Republic of Panama, 1996 U.S. Dist. LEXIS 11973 (S.D.N.Y. 1996).

Like the clause at issue in Rabbi Jacob Joseph School the clause in Schedule "6" contains no specific reference to removal. Indeed the word "removal" cannot be found therein. Moreover, like the Rabbi Jacob Joseph School clause, there clause in Schedule "6" does not even indicate that the parties agreed to litigate in any particular court. Rather the subject clause refers generally to "a court of competent jurisdiction in the State" which plainly includes appropriate state or federal courts since both can be considered courts of competent jurisdiction in the State of New York.

Unlike the clauses in this case and Rabbi Jacob Joseph School, the clauses at issue in Eklecco L.L.C. and Elliott Assocs., L.P. contained precise language.

In Elliott Assocs., L.P. Judge Chin considered an agreement which stated:

> Borrower [Panama] irrevocably waives any right it may now or hereafter have to remove to a United States federal court any action brought hereunder or under the Notes in a state court of the State of New York.

Elliott Assocs., L.P. v The Republic of Panama, 1996 U.S. Dist. LEXIS 11973 (S.D.N.Y. 1996).

That the agreement expressly mentions waiver of removal to a federal court of an action brought in a state court of the State of New York is a prime exemplar of language deemed to be sufficiently clear and unequivocal to waive the statutory right to removal. *See*, Elliott Assocs., L.P.; *see also*, Rabbi Jacob Joseph School, *supra* (basing its holding on the analysis of Elliot

Assocs. L.P. "Consistent with the holding in <u>Elliott Associates, L.P.</u>, courts in this Circuit have generally found a waiver of the right to remove a case to federal court only if the forum selection clause contains explicit language evidencing waiver or "where the forum selection clause identifies a particular court in which disputes will be heard.");

In <u>Eklecco L.L.C.</u> Judge Munson considered an agreement which stated:

> This Lease, and any disputes concerning this Lease, shall be governed by the laws of the State of New York and any dispute concerning the application or any interpretation of any portion of the Lease or the conduct of the parties shall be brought in the New York      Supreme      Court,      Onondaga      County.

<u>Eklecco L.L.C. v. Rainforest Cafe, Inc.</u>, 2002 U.S. Dist. LEXIS 11484 (N.D.N.Y. 2002).

The forum selection clause leading to remand in <u>Elliott Assocs., L.P.</u> contained explicit language evidencing waiver, ie. removal was expressly set forth therein. The forum selection clause in <u>Eklecco L.L.C.</u> identified a particular court, ie. the New York Supreme Court, Onondaga County, therefore remand to state court was proper. *Cf.*, <u>Karl Koch Erecting Co. v. New York Convention Center Dev. Corp.</u>, 838 F.2d 656, 659 (2d Cir. 1988)["The forum-selection clause provided that "no action or proceeding shall be commenced by [Koch] against [NYCCDC] except in the Supreme Court of the State of New York." This language expressly forbids Koch from commencing suit in a forum other than state court. Koch's diversity suit in the Southern District therefore clearly violated the clause and was correctly dismissed."].

The clause in Schedule "6" at issue in the subject case neither expressly mentions waiver of removal nor identifies a particular court in which disputes will be heard.

Therefore, consistent with the analysis in <u>Rabbi Jacob Joseph School</u>, etc., this Court should find that there is no "clear and unequivocal" waiver of the statutory right to removal.

To the extent that this Court deems that language in Schedule "6" to be ambiguous, such must be construed against the party claiming a waiver of the statutory right to litigate in federal

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

court. *See*, Cronin, *supra* (*citing to*, Pullman, *supra*). To the extent that the phrase "shall be brought in a court of competent jurisdiction in the State" may be construed as meaning either only a state court located in New York or either a state court or a Federal Court located in New York the court should err on the side of PMO and against the CITY which is claiming a waiver of PMO'S right to litigate in Federal Court. *See*, Pullman, *supra*("Thus, if "New York courts" can mean both federal and state courts, it should be so construed unless express and restrictive language indicates otherwise").

The Pullman case together with subsequent authority teaches, however, that there is no ambiguity in the language at issue here. The phrase in Schedule "6" is a term of mere geography rather than a term of sovereignty. Specifically PMO and the CITY merely agreed that litigation be brought to a court _**in**_ the State. There was no agreement that litigation be brought in a court _**of**_ the State. This is a distinction with a real difference as it objectively indicates that the Parties intended a geographic rather than a sovereign restriction. *See, e.g.,* Cronin, *supra* [Collecting and analyzing authorities deeming use of the possessive "Courts _**of**_ the State" as opposed to the locational "Courts _**in**_ the State" and concluding the latter to be geographical term not excluding federal courts and the former a sovereign term intended to exclude federal courts]. As the language here uses the term _**in**_ as opposed to the term _**of**_, federal courts in the State are not excluded.

Finally, it must be emphasized that, broken down into its constituent parts the "Venue" clause in Schedule "6" indicates only that the parties shall not object to the "institution" or "maintenance" of an action based upon objections to "venue", "forum non-conveniens" or "other ground relating to the appropriate forum". *See*, Schedule "6". While the clause indicates that the parties will not object to the "institution" or "maintenance" of the action it is silent as to

"removal" of the action. Indeed although PMO opposes the relief sought in the Petition, PMO does not, by the mere act of removing the case, object to its "institution" or "maintenance".

Further, that the parties may have waived "venue" and "forum" based objections does not impair the vitality of their right of removal. *See*, Congress Fin. Corp. v. Bortnick, 2000 U.S. Dist. LEXIS 15750, 6-7 (S.D.N.Y. 2000)["While venue relates to the convenience and fairness of a chosen forum, jurisdiction relates to the power of a court to decide a case or controversy before it. *See*, Lindahl v. Office of Personnel Management, 470 U.S. 768, 793 n.30, 84 L. Ed. 2d 674, 105 S. Ct. 1620 (1985) (comparing the concepts of venue and jurisdiction); Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 167-68, 84 L. Ed. 167, 60 S. Ct. 153 (1939) (same). Removal is simply one of the procedures for invoking the limited grant of federal jurisdiction, *See*, Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 808-09, 92 L. Ed. 2d 650, 106 S. Ct. 3229 (1986); 16 James Wm. Moore, Moore's Federal Practice § 107.03, at 107-02 (3d ed. 2000), and that right to invoke federal jurisdiction [is not waived where only objections to "venue" and "forum" are waived].

Accordingly, the assertion of the CITY that PMO has waived its statutory right to removal by virtue of the language contained in the "Venue" clause at Schedule "6" of the Agreement must fail and the motion to remand must be denied.

The remaining cases cited by the CITY are from outside the Second Circuit and are distinguishable. The court in Congress Fin. Corp. v. Bortnick, *supra*, held that the:

> Eleventh Circuit's decision in Snapper, Inc. v. Redan, 171 F.3d 1249 (11th Cir. 1999), [cited by the CITY herein], does not require remand of this action. In Snapper, the forum selection clause provided that the defendants "expressly waived whatever rights may correspond to it by reason of its present or future domicile." Snapper, 171 F.3d at 1260. Based on this contractual language, the Eleventh Circuit concluded that this waiver was tantamount to a waiver by the defendants of their right to remove since that right is "based                    on                    domicile."

Congress Fin. Corp. v. Bortnick, *supra*.

The clause in <u>Congress Fin. Corp. v. Bortnick</u>, like the clause in Schedule "6" lacked the "domicile" language in <u>Snapper</u> and thus the basis for remand in <u>Snapper</u> cannot serve as a basis for remand in this case.

The matter of <u>Dawson v. Fitzgerald</u>, 1999 U.S. App. LEXIS 20260 (10th Cir. 1999) cited by the CITY is likewise inapposite in that the clause at issue there designated a particular court: "and all parties agree that venue is proper in the District Court of Eagle County, Colorado". There is, concededly, no such designation of the Supreme Court of Orange County, New York, in Schedule "6" to this Agreement.

The matter of <u>Ondova Ltd. Co. v. Manila Indus.</u>, 2007 U.S. Dist. LEXIS 46080 (N.D. Tex., 2007) found waiver of the right to removal where the phrase in issue provided that suits be brought to a Court "in and for the County of Dallas". Again, there is no such term of sovereignty such as "in and for the County of Orange" present in Schedule "6" to the Agreement. *See*, <u>Pullman</u>; <u>Cronin</u>, *supra*. Therefore, the <u>Snapper</u>, <u>Dawson</u> and <u>Ondova</u> matters relied upon by the CITY can be distinguished and provided no support for the CITY'S motion.

Finally, the interpretation urged by the CITY will encourage a race to the court house as, under the CITY'S strained reading of the Agreement, the first to file may impose jurisdictional limits on the other party. It might also result in a multiplicity of suits as the party wishing to remove a case in the future will find it necessary to commence a plenary action to prosecute its federal claims. Both results are to be discouraged as they would surely amount to a drain on judicial economy.

For all of the forgoing reasons, the CITY'S motion to remand on the grounds of waiver by Agreement should be denied.

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

POINT II:

### THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS CASE AND THE CITY'S ARGUMENTS TO THE CONTRARY MUST BE REJECTED.

*A. DIVERSITY JURISDICTION EXISTS BECAUSE THERE IS COMPLETE DIVERSITY AMONG THE PARTIES AND BECAUSE THE AMOUNT IN CONTROVERSY IN THE UNDERLYING ARBITRATION COMPLAINT BY PMO FAR EXCEEDS $75,000.00.*

In this case so-called "Diversity Jurisdiction" exists as there is complete diversity among the parties and because the amount in controversy in the underlying arbitration complaint filed by PMO far exceeds the $75,000.00 statutory threshold.

The CITY does not dispute that there is complete diversity among the parties and in fact alleges diversity in the Petition.[3] As set forth the Notice of Removal filed by PMO (*See*, ECF Docket #1) all of the CITY parties are citizens of the State of New York while PMO is a citizen of Delaware and Alabama by virtue of its place of formation and principal place of business respectively. Therefore, the only question raised by the CITY in its motion to remand is whether or not the $75,000.00 amount in controversy threshold is met in this case.

The CITY states the rule that "generally . . . the amount in controversy is calculated from the plaintiff's standpoint" citing to the matter of Kheel v. Port of New York Authority, 457 F.2d 46, 49 (2d Cir. 1972). This citation is of little or no assistance to the Court in deciding the motion

---

[3]     The CITY purports to "reserve the right to challenge the actual diversity of the parties" at some later date. The time to challenge complete diversity is on this motion to remand and the CITY has not done so, thereby waiving the argument. In any event the CITY'S pleadings recite facts which establish complete diversity among the parties. *See*, Petition at Exhibit "1" to Murphy Declaration. In paragraphs 3 through 13 of the Petition the CITY alleges that all CITY parties are citizens of the State of New York and in paragraph 14 that PMO is a citizen of the State of Delaware and the State of Alabama. Therefore the CITY should be estopped from later raising issues as to diversity.

to remand as it does not address an amount in controversy analysis in the context of removal of a

state court petition to stay arbitration which is precisely what is before the Court now.[4]

Indeed, the Courts in this Circuit, and others, have generally agreed that where, as here,

the matter removed seeks injunctive relief directed at an underlying arbitration there is a more

particular analysis which focuses not on the value of the Petition itself but rather upon the value

of the underlying Arbitration. *See, e.g.*, Doctor's Assocs. v. Hamilton, 150 F.3d 157, 160 (2d Cir.

1998)[" The amount in controversy in a petition to compel arbitration . . . is determined by the

underlying cause of action that would be arbitrated . . . [put another way]  the amount in

controversy is the difference "between winning and losing the underlying arbitration")(*internal*

*citations omitted*)]; Davenport v. Procter & Gamble Mfg. Co., 241 F.2d 511, 514 (2d Cir.

1957)["In considering the jurisdictional amount requirement the court should look through to the

possible award resulting from the desired arbitration, since the petition to compel arbitration is

only the initial step in a litigation which seeks as its goal a judgment affirming the award . . .

[and] removability is determined by the allegations of the complaint if it sets up the amount in

controversy, and, if it does not, the court may look to the petition for removal."]; Hough v.

Merrill Lynch, Pierce, Fenner & Smith, Inc., 757 F. Supp. 283, 286 (S.D.N.Y. 1991)["In actions

seeking declaratory or injunctive relief, the amount in controversy is measured by the pecuniary

value of the rights being litigated."]; America's Money Line, Inc. v. Coleman, 360 F.3d 782, 786

(7th Cir. 2004)["In the context of actions to compel arbitration, we have adhered to the rule that,

in order to ascertain whether the jurisdictional amount for the diversity statute has been met, the

---

[4]    Indeed, there is divergent authority on the analysis to be used in removal cases, *See,* Cowan v. Windeyer, 795 F. Supp. 535, 538 (N.D.N.Y. 1992)["The Second Circuit has not yet had an opportunity to instruct district courts on whether the jurisdictional amount should be measured from the perspective of the party removing the case to federal court."]; and in cases where only "equitable" or "injunctive" relief is sought, *see,* Maxons Restorations, Inc. v. Newman, 292 F. Supp. 2d 477, 480 (S.D.N.Y. 2003)["Courts' analyses of the "sum or value" of the "amount in controversy," 28 U.S.C. § 1332(a), differ somewhat, depending upon the circumstances of the case . . . when a plaintiff seeks equitable relief but no damages, the evaluation of the amount in controversy becomes more complex . . . even an action that seeks only equitable relief may be removed if the value of the right at issue, or the extent of the injury to be prevented, exceeds $ 75,000"].

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

appropriate focus is the stakes of the underlying arbitration dispute." (*citing to*, <u>American Bankers Life Assurance Co. v. Evans</u>, 319 F.3d 907 (7th Cir. 2003), <u>Doctor's Assocs.</u>, supra.)); <u>Oklahoma Retail Grocers Asso. v. Wal-Mart Stores, Inc.</u>, 605 F.2d 1155, 1160 (10th Cir. 1979).[5]

As aptly put by the Seventh Circuit court in <u>America's Money Line, Inc.</u> the appropriate focus on this motion to remand is the stakes of the underlying arbitration dispute. Therefore the apposite analytical locus is not the CITY Petition but rather it is the claims advanced by PMO in the Arbitration Complaint certain of which the Petition seeks to stay and to dismiss, which effort PMO opposes and seeks to compel arbitration of those claims. PMO respectfully submits that the stakes of the underlying arbitration dispute far exceed the $75,000.00 statutory threshold. Therefore the motion to remand should be denied.

In the case at bar PMO filed a Complaint with the American Arbitration Association pursuant to the terms of the Agreement between the parties. ("Arbitration Complaint"). *See*, Exhibit 1-A to Murphy Declaration. In the Arbitration Complaint, PMO seeks $286,192,000.00 in damages plus statutory attorney fees, arbitration costs, punitive damages and other declaratory relief of substantial value to PMO. *See*, Exhibit 1-A to Murphy Declaration.

---

[5]     The <u>matter of Paduano & Weintraub LLP v. Wachovia Secs</u>, 185 F. Supp. 2d 330 (S.D.N.Y. 2002) which is relied upon heavily by the City is inapposite to this line of cases and does nothing to dilute the rule that the appropriate focus on a motion to remand is the stakes of the underlying arbitration dispute.

In <u>Paduano</u>, the plaintiff law firm sought a declaration in state court that it was not precluded by conflict of interest from representing Prudential Securities, Inc. in arbitration with Wachovia Securities. Wachovia removed to Federal Court and Paduano moved to remand. In granting the motion to remand, the court noted that "It is entirely correct that the court in <u>Hough</u> assessed the amount in controversy by reference to the amount at stake in the underlying arbitration."

However, the <u>Paduano</u> court declined to look to the arbitration between Prudential and Wachovia because Prudential was not a party to the matter commenced by Paduano and removed by Wachovia and because neither party had moved to stay the arbitration and thus the arbitration was not before the court. The analysis of the <u>Paduano</u> court does not apply here because PMO and the CITY are both parties to the underlying arbitration and because the CITY has moved to stay the arbitration and thus the arbitration is in that way before this Court. Far from diluting the rule cited in this line of cases, <u>Paduano</u> cites <u>Hough</u> with approval and does nothing to support the motion to remand. The <u>Paduano</u> case should be distinguished and disregarded.

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

It has been held that "It must appear *to a legal certainty* that the claim is really for less than the jurisdictional amount to justify a dismissal." Doctor's Assocs. v. Hamilton, 150 F.3d 157, 160 (2d Cir. 1998)[emphasis in original].

PMO respectfully submits that it is far from certain that its claims are for less that the jurisdictional amount. Indeed, if the relief sought by PMO is awarded by the arbitrator it will be of a value well over $75,000.00 to PMO.

The factual allegations and claims for relief underpinning the Arbitration Complaint are set forth at length therein. *See*, Exhibit 1-A to Murphy Declaration. By way of summary, the gravamen of the Arbitration Complaint is that the CITY parties have engaged in conduct and other wrongdoing which PMO alleges amount to tortious interference with PMO'S business relations and prospective relations, as well as being violative of PMO'S rights under both the Federal and New York State Constitutions. The CITY has offered nothing to even hint that PMO'S claims, if successful in the arbitration, do not have a value in excess of $75,000.00. Indeed, the CITY will be hard pressed to do so given the lengthy course of dealings between the parties and the massive scale of the project.

The CITY, in its Petition, concedes the parties have been involved with this project for over 10 years and that the project contemplates, ultimately, the construction and operation of a facility that would utilize the innovative CES OxyNol process to covert a large amount of Municipal Solid Waste to Ethanol. It begs credulity to posit that the value of the injuries to PMO'S rights in connection with the project do not, *to a legal certainty*, amount to more than the jurisdictional amount.

Further, as alleged in PMO'S Arbitration Complaint "PMO estimates that the target cost of development, construction, and installation of the facility and of certain financing costs will total $287 million . . . [and] PMO has spent more that $41 million in pre-development work and

development related activities regarding the waste-to-ethanol facility. *See*, Exhibit 1-A to Murphy Declaration at Paragraph 4, 6. PMO has likewise applied for a United States Department of Energy Loan guarantee valued at $229 million and other private equity financing. *See*, Exhibit 1-A to Murphy Declaration at Paragraph 16.

Aside from the $41 million dollars in monetary damages claimed by PMO as lost project expenses already incurred, PMO has a claim for lost profits under the City agreements in the range of several hundred million dollars. *See*, Exhibit 1-A to Murphy Declaration.

PMO respectfully re-iterates that under the *legal certainty* standard it cannot be said that the amount in controversy here fails to exceed $75,000.00 in the form of the potential arbitration award. Therefore, the Court should find that subject matter jurisdiction exists, and the motion by the CITY to remand should be denied entirely. *See*, Doctor's Assocs. v. Hamilton, 150 F.3d 157, 160 (2d Cir. 1998); Davenport v. Procter & Gamble Mfg. Co., 241 F.2d 511, 514 (2d Cir. 1957); Hough v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 757 F. Supp. 283, 286 (S.D.N.Y. 1991); *Cf.*, America's Money Line, Inc. v. Coleman, 360 F.3d 782, 786 (7th Cir. 2004).

> ### B. THE UNDERLYING PETITION RAISES A FEDERAL QUESTION IN THAT THE ULTIMATE DISPOSITION OF THE MATTER NECESSARILY DEPENDS ON RESOLUTION OF SUBSTANTIAL QUESTIONS OF FEDERAL LAW

Although the Court, as above, clearly has subject matter jurisdiction over the Petition via so-called "Diversity Jurisdiction", the matter of whether the underlying Petition raises a Federal Question must be addressed as it is raised in the CITY'S motion to remand. It is clear that there is so-called "Federal Question Jurisdiction" over the Petition in that the ultimate disposition of the Petition necessarily depends on resolution of substantial questions of Federal Law.

The CITY contends there is an absence of so-called Federal Question subject matter jurisdiction because, under the "well-pleaded complaint" rule its Petition seeks relief based solely upon the laws of the State of New York. This contention must fail as it is both legally and

factually lacking in merit. The Petition on its face may not allege that federal law creates any cause of action set forth in the Petition but it nevertheless patently seeks relief which invokes substantial questions of federal law when it seeks a permanent stay and/or dismissal of PMO'S Federal Constitutional claims brought under section 1983. *See*, Exhibit "1" to Murphy Declaration at paragraphs 88-92 seeking a permanent stay and/or dismissal of PMO'S Federal Constitutional claims on the "public policy grounds" that such claims are *per se* non-arbitral.

It has been held that:

> Federal question jurisdiction exists where a well-pleaded complaint establishes either that federal law creates the cause of action **or** that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.

Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 25 (2d Cir. 2000). (*emphasis supplied*).

Thus there is an alternative test for establishing so-called "Federal Question" jurisdiction: 1) where federal law creates the cause of action or 2) where the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. There is no question but that the Petition, as plead, falls squarely within the parameters of the second test.

Concededly the law in this Circuit is that "the FAA does not confer subject matter jurisdiction on the federal courts even though it creates federal substantive law." Greenberg v. Bear, *supra*. Neither is "raising federal-law claims in the underlying arbitration is sufficient to supply this "independent basis."" Greenberg v. Bear, *supra*.[6]

"Nevertheless, federal jurisdiction may still lie if the ultimate disposition of the matter by the federal court "necessarily depends on resolution of a substantial question of federal law." Barbara v. New York Stock Exch., Inc., 99 F.3d 49, 54 (2d Cir. 1996). (internal quotation marks omitted). Thus, here, the Court must decide whether the CITY'S Petition presents a substantial

---

[6]    Compare this approach with the amount in controversy analysis for so-called "Diversity Jurisdiction" which *mandates* an evaluation of the underlying arbitration claim. See, e.g., *See*, Doctor's Assocs. v. Hamilton, 150 F.3d 157, 160 (2d Cir. 1998); Davenport v. Procter & Gamble Mfg. Co., 241 F.2d 511, 514 (2d Cir. 1957).

question of federal law. PMO respectfully submits that it does in at least one very important

regard when it seeks dismissal of PMO'S federal constitutional claims on the "public policy

grounds" that such claims are *per se* non-arbitral. In <u>Greenberg v. Bear</u>, *supra*, it was held:

> In determining federal question jurisdiction, courts must make principled, pragmatic distinctions, engaging in a selective process which picks the substantial causes out of the web and lays the other ones aside. Examining only those allegations which are properly raised in a well-pleaded complaint, we look to the nature of the federal question raised in the claim to see if it is sufficiently substantial to warrant federal jurisdiction. <u>Greenblatt v. Delta Plumbing & Heating Corp.</u>, 68 F.3d 561, 570 (2d Cir. 1995) The greater the federal interest at stake, the more likely it is that federal jurisdiction will be found. *See* <u>West 14th St. Commercial Corp. v. 5 West 14th Owners Corp.</u>, 815 F.2d 188, 193 (2d Cir. 1987) (*citing* <u>Merrell Dow Pharmaceuticals, Inc. v. Thompson</u>, 478 U.S. 804, 814 n.12, 92 L. Ed. 2d 650, 106 S. Ct. 3229 (1986).

<u>Greenberg v. Bear, Stearns & Co.</u>, 220 F.3d 22, 26 (2d Cir. 2000) (*Internal quotes omitted*).

PMO respectfully submits that the question raised by the Petition of whether section 1983

Federal Constitutional claims are ever arbitral on "public policy" or other federal common law

grounds is the central case of a "a substantial question of federal law." This is particularly true

where the parties enter into an arbitration agreement that requires "all claims, actions, disputes or

controversies of any kind arising out of or relating to the Agreement or concerning any aspect of

performance under the Agreement between them" to be resolved by mandatory and binding

arbitration administered by the AAA pursuant to the FAA. *See,* Exhibit 1-B to Murphy

Declaration at pages 5-1, 5-2.

The Court is respectfully referred to the Declaration of Nicholas A. Pascale filed at ECF

Docket #4 for more extensive briefing on the novelty and significance of this issue. In brief,

there is no case law in this Circuit nor from the Supreme Court directly addressing the question

of whether section 1983 Federal Constitutional claims are ever arbitral or whether they must

always be brought and resolved in a traditional judicial forum. Thus it is a question of first

impression and of such importance that it requires the attention of a Federal Court and should not be left for resolution by a New York State court.

At least one court outside the Second Circuit has found that "it is an unanswered question whether an individual can contract to arbitrate Section 1983 claims in the same way that she can contract to arbitrate statutory claims under [other federal statutes such as] the ADEA, Sherman Act, Securities Act, or Title VII." Tripp v. Renaissance Advantage Charter Sch., 2003 U.S. Dist. LEXIS 19834 (D. Pa. 2003). As recognized by Tripp the resolution of this question involves, necessarily, analysis of "Congressional intent, which can be found in the statute's text, its legislative history, or in an inherent conflict between arbitration and the underlying purposes of the statute." See, Tripp, supra, (citing to Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (U.S. 1991) ("having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue") (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)).

PMO urges this Court to find that this issue raised in the Petition is of such substantial importance that it results in so-called "Federal Question Jurisdiction.[7]

Finally, the assertion in the CITY'S Memorandum of Law to the effect that "Strikingly, after removing the action, PMO admits that this Court lacks jurisdiction to decide issues concerning New York state's [sic] notice of claim requirement." is misplaced as PMO made no such admission. See, CITY Memorandum of Law dated August 10th, 2007 at page 14 citing to Pascale Declaration at Paragraph 47 thereof. The CITY conflates subject matter jurisdiction with

---

[7] The Petition alternatively argues for the dismissal of the section 1983 claims on the ground that they are "outside the scope" of the Agreement. This is clearly not a substantial Federal Question. However it also completely lacks merit given the breadth of the Arbitration Clause and the extreme preference for arbitration evinced by Federal Arbitration Act and the body of case law it has bequeathed. Therefore the Court must, of necessity, resolve the substantial question of whether and under what circumstances parties may by contract or otherwise agree to arbitrate claims arising under section 1983.

the question of which issues are, under the Federal Arbitration Act, reserved to the arbitrator. It is PMO'S position that this Court has subject matter jurisdiction of the Petition and that in disposing of the Petition it should decline to grant the relief sought by the CITY by finding that questions as to the application of statutes of limitations are reserved to the arbitrator.

POINT III:

THE LAW DECLARATION FILED WITH THE NOTICE OF REMOVAL BY COUNSEL FOR PMO IS PROPER AND SHOULD NOT BE STRICKEN. ALTERNATIVELY, A MEMORANDUM OF LAW IS FILED HEREWITH WHICH MAKES MOOT THE CITY'S REQUEST TO STRIKE. FINALLY, THE CITY HAS FULLY SUBMITTED ITS ARGUMENTS ON THE MERITS OF THE PETITION AND HAS NO RIGHT TO FURTHER BRIEFING OF THE ISSUES RAISED IN THE PETITION

The CITY makes the request that the Declaration of Nicholas A. Pascale (ECF Docket #4) be stricken from the record. However, this request is out of order and should be denied. Alternatively, a Memorandum of Law identical in every substantial regard to the Pascale Declaration is filed herewith thereby making moot the City's request. The CITY is not entitled to submit a Reply, however given the complex nature of the issues raised in the Petition, should this Court feel that further briefing of some or all of the issues raised in the Petition and PMO'S opposition thereto could assist the Court then PMO will be guided accordingly.

The request by the CITY to strike the Pascale Declaration (ECF Docket #4) from the record is out of order because this document was filed in opposition to the law Affirmation of Michael G. Murphy which was filed in support of the CITY'S Petition. It is not intended to be any sort of end run around the Federal Rules or any other order or procedure.

In point, the CITY brought this matter on by *ex parte* Order To Show Cause, Petition, and Affirmation of Counsel in support of the Petition. A copy of the Petition is annexed to the Murphy Declaration as Exhibit "1". A copy of the State Court Order to Show Cause is annexed to the Murphy Declaration as Exhibit "2". The law Affirmation which was filed by the CITY in

support of the Petition and Order to Show Cause was omitted from the Murphy Declaration.

However, PMO filed a copy of this law Affirmation with its Notice of Removal. *See*, Pascale

Declaration of even date herewith and ECF Docket #1-7.

The affirmation of Murphy dated July 6th, 2007 was filed with the State Court and is

captioned as "Affirmation in Support of Petition to Stay Arbitration and Request for a

Temporary Stay". Ostensibly, in response to this filing, New York State Supreme Court Justice

Joseph G. Owen issued the Order to Show Cause which, among other things, required PMO to

file its opposition and to show cause why the relief sought by the CITY should not be granted on

or before July 23rd, 2007.

Rather than file the opposition and answer with the State Court, PMO filed it with this

Court as directed by Justice Owen's order and in accord with the Federal Rules of Civil

Procedure.

The mere act of filing a notice of removal does not relieve a party from filing a

responsive pleading where one had not yet been filed in the State Court. So states Federal Rule

of Civil Procedure 81(c):

> (c) Removed Actions. These rules apply to civil actions removed to the
> United States district courts from the state courts and govern procedure after
> removal. Repleading is not necessary unless the court so orders. In a removed
> action in which the defendant has not answered, the defendant shall answer or
> present the other defenses or objections available under these rules within 20
> days after the receipt through service or otherwise of a copy of the initial
> pleading setting forth the claim for relief upon which the action or proceeding
> is based, or within 20 days after the service of summons upon such initial
> pleading, then filed, or within 5 days after the filing of the petition for
> removal, whichever period is longest.

USCS Fed Rules Civ Proc R 81 (USCS 2007).

Since PMO had neither answered the Petition, nor presented other defenses or objections

to the State Court at the time this matter was removed, both PMO'S Answer (ECF Docket #3)

and the Pascale Law Declaration (ECF Docket #4) in Opposition to the Murphy Law Affirmation

(ECF Docket #1-7) were timely and properly filed in this Court in accord with FRCP 81(c).

Moreover, Justice Owen had already set the briefing schedule for the issues raised in the

Petition in his Order to Show Cause. *See*, Exhibit "2" to the Murphy Declaration. According to

the Order PMO was to "show cause" by July 23rd, 2007. There was no provision for the CITY to

submit reply papers in the Order. Therefore, according to the Order, the July 6th Murphy

Affirmation (ECF #1-7) and the July 23rd opposition from PMO is all the briefing allowed under

the Order. Since the case was removed on July 23rd, the opposition in the form of the Pascale

Law Declaration was filed with this Court rather than with Justice Owen. This was entirely

proper under both FRCP 81(c) and 28 U.S.C. § 1450 which provides in part:

> Whenever any action is removed from a State court to a district
> court of the United States . . . All injunctions, orders, and other
> proceedings had in such action prior to its removal shall remain in
> full force and effect until dissolved or modified by the district
> court.

28 U.S.C. § 1450 (2007).

Thus, it has been held that:

> [W]henever a case is removed, interlocutory state court orders are
> transformed by operation of 28 U.S.C. § 1450 into orders of the
> federal district court to which the action is removed. The district
> court is thereupon free to treat the order as it would any such
> interlocutory order it might itself have entered.

Nissho-Iwai American Corp. v. Kline, 845 F.2d 1300, 1304 (5th Cir. 1988).

Accordingly, Justice Owen's Order became the Order of this Court and the briefing

schedule before this Court mandated that opposition papers be filed on July 23rd, 2007.[8] The

---

[8] Of course Fed R. Civ. P. 81(c) provides an additional 5 days for the filing, however to avoid any questions of
timing the Answer and Opposing Law Declaration were all served on the CITY simultaneously with the Notice of
Removal. It is also true the section 1450 permits this Court to modify the Order to Show Cause though no such
Order has been issued by this Court to date.

opposition papers were so filed and the Order of this Court does not provide the CITY with any opportunity to file Reply papers. *See*, 28 U.S.C. § 1450; <u>Nissho-Iwai American Corp., *supra*.</u>

The CITY, for all intents and purposes had exhausted its opportunity to brief this matter by electing to file the Petition by Order to Show Cause. Had the CITY merely filed the Petition and then brought on a notice of motion, there could be were it properly noticed, the opportunity for a Reply. However, in electing the expedited remedy of Order to Show Cause the CITY waived that option and should be precluded from further briefing on the issues raise in the Petition and the opposition of PMO thereto. *See, generally,* SIEGEL, NEW YORK PRACTICE 3D EDITION §248.

Of course, should the Court feel that further briefing of these issues would assist it in rendering a determination on the Petition then, in that event, PMO will be guided accordingly and would request the opportunity to submit a Sur-Reply to any Reply brief accepted from the CITY.

## CONCLUSION

WHEREFORE, based upon the foregoing, PMO respectfully requests this Court deny the motion of the CITY to remand this matter to New York State Court, Accept the Pascale Declaration (ECF Docket #4) and the re-submitted Pascale Declaration in the form of a Memorandum of Law filed herewith, together with such other and further relief as may be just proper and equitable.

Dated: Newburgh, New York
       September 7th, 2007

Respectfully submitted,

NICHOLAS A. PASCALE, ESQ. (NP-5766)
TARSHIS, CATANIA, LIBERTH,
MAHON & MILLIGRAM, P.L.L.C.
Attorneys for PMO
One Corwin Court - P.O. Box 1479
Newburgh, New York 12550
Tel. No. (845) 565-1100