UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CITY OF MIDDLETOWN, et al.,          :
                                      :
        Plaintiffs,                :
                                      :
  -against-                          :     Civil No. 07-6572 (CLB)
                                      :
PENCOR MASADA OXYNOL, LLC,            :     **Return Date:**
                                      :     **September 28, 2007**
        Defendant.                 :
------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFs' MOTION TO
REMAND TO STATE COURT AND TO STRIKE THE DECLARATION OF
<u>NICHOLAS A. PASCALE, ESQ. IN OPPOSITION TO PETITION</u>**

## Table of Contents

|  | Page |
|---|---|
| INTRODUCTION | 1 |
| ARGUMENT | 2 |
| I. PMO EXPRESSLY WAIVED ITS RIGHT TO REMOVE THIS MATTER TO FEDERAL COURT | 2 |
| II. THIS COURT LACKS FEDERAL QUESTION JURISDICTION | 5 |
| III. THIS COURT LACKS DIVERSITY JURISDICTION | 7 |
| IV. PMO FAILED TO CURE THE DEFECTIVE PASCAL DECLARATION | 9 |
| CONCLUSION | 10 |

## INTRODUCTION

Plaintiffs the City of Middletown (the "City") and the individual City officials named in this action (collectively with the City, the "Plaintiffs"), respectfully submit this reply memorandum of law in support of their motion to remand the above-captioned action to state court pursuant to 28 U.S.C. § 1447, and, if remand is not ordered, to strike the undated Declaration of Nicholas A. Pascale, Esq. in Opposition to the Petition, on the grounds that the legal argument contained therein must be made in a motion on notice pursuant to Fed. R. Civ. P. 12.

Defendant Pencor-Masada Oxynol, LLC ("PMO") entered into a series of agreements with the City (the "City Agreements"), in which both the City and PMO expressly agreed that, in the event a dispute over the arbitrability of claims arose, neither the City nor PMO could object to the aggrieved party's choice of forum. When such a dispute did arise, and Plaintiffs filed the instant petition (the "Petition") to stay the arbitration proceeding captioned *Pencor-Masada Oxynol, LLC v. City of Middletown, New York, et al.*, case no. 13 192 Y 01324 07 (filed on or about June 18, 2007) (the "Arbitration Proceeding"), PMO repudiated the express waiver in the City Agreements and objected to Plaintiffs' state forum choice by seeking removal of the Petition. This Court should enforce the clear and unequivocal waiver of forum objection by remanding this action to state court.

Even if PMO had not waived its objection to the City's choice of forum, this Court lacks jurisdiction over the Petition. Plaintiffs sought a stay of arbitration as to: (1) individuals who never agreed to submit disputes to arbitration; (2) claims for punitive damages asserted against

certain of those individuals;[1] (3) PMO's tortious interference and *state* constitutional claims based on PMO's failure to timely file a notice of claim as required under *state* law; and (4) federal constitutional claims on the basis that those claims exceeded the scope of the arbitration clause and because *state* public policy favors the adjudication of constitutional claims by a court. *See* Declaration of Michael Murphy, dated August 10, 2007 ("Murphy Decl.") Ex. 1 (Petition Ex. A). Plaintiffs never sought an adjudication on the merits of PMO's claims, nor monetary damages, nor an injunction restraining PMO from pursuing any of its federal claims in the appropriate court. Indeed, under the forum objection waiver, PMO would have had its choice of forum to bring its non-arbitrable claims. None of Plaintiffs' state law claims raise any federal questions, and the amount in controversy is insufficient to establish diversity jurisdiction.

## ARGUMENT

### I. PMO EXPRESSLY WAIVED ITS RIGHT TO REMOVE THIS MATTER TO FEDERAL COURT

PMO and the City expressly agreed that:

> *any action, suit or proceeding* arising out of this Agreement or any transaction contemplated hereby shall be brought in a court of competent jurisdiction in the State, and that *neither [PMO] nor the City shall object to the institution or maintenance of any such action, suit or proceeding in such court based on improper venue, forum non conveniens or any other ground relating to the appropriate forum for such action, suit or proceeding.* Notwithstanding the foregoing, the provisions of Schedule 5 shall govern and control.

*Id.* (Petition Ex. B, City Waste Management Services Agreement, Schedule 6, Venue) (emphasis added). This provision leaves no doubt that PMO unequivocally waived any objection to the City's state court forum choice.

---

[1] PMO has conceded that the individually named officials and the punitive damages sought against them were improperly raised in the Arbitration Proceeding. However, because PMO has yet to propose an amended arbitration complaint, those claims remain the subject of the Petition.

PMO asserts that Schedule 5 renders Schedule 6 meaningless. However, it is a black-letter rule of contract interpretation that every term of an agreement must be given meaning and effect. *See, e.g., India.com, Inc. v. Dalal*, 412 F.3d 315, 323 (2d Cir. 2005); *County of Columbia v. Continental Ins. Co.*, 83 N.Y.2d 618, 626, 612 N.Y.S.2d 345, 347 (1994); *Dietz v. Compass Prop. Mgmt. Corp.*, 17 A.D.3d 1119, 794 N.Y.S.2d 766 (4th Dep't 1996). PMO's argument that the last sentence of Schedule 6 is "annihilating" and that it somehow does not apply to a petition to stay arbitration, ignores this longstanding principle of contract interpretation. PMO Memorandum of Law in Opposition to Plaintiffs' Remand Motion ("PMO Opp.") at 5. PMO relies on its tortured construction of the contract language to ask this Court to completely excise this section of Schedule 6 from the City Agreements.

PMO's response to Plaintiffs' waiver argument relies entirely on a non-existent conflict between Schedules 5 and 6. Read together, Schedule 5 and Schedule 6 provide that non-arbitrable claims "shall be brought" in a court of competent jurisdiction in New York, i.e., in either a state or federal forum, and that neither PMO nor the City will object to the aggrieved party's forum choice. Schedule 5 provides that a petition to stay arbitration "may" be brought "in court . . . in accordance with this Agreement[,]" thereby permitting a party to seek a stay of arbitration in a New York court, and does not mention venue at all. Murphy Decl., Ex. B (Schedule 5 ¶ 1(c)); *see also* PMO Opp. at 6 (admitting that "there is no mention of removal or of state court or of federal court in Schedule 5"). Schedule 6's mandatory language ("shall be brought" and "shall not object") unambiguously gives the choice of a state or federal forum to the party bringing the action. Plaintiffs chose a state forum. PMO clearly and unequivocally waived its right to object to that forum choice by agreeing to the terms of Schedule 6.

Contrary to PMO's assertion, Plaintiffs never argued that Schedule 6 forbids PMO from bringing a lawsuit in federal court or that it fixes venue in New York Supreme Court. *See* PMO Opp. at 9-10. Nor did Plaintiffs argue that the forum objection waiver deprives this Court of jurisdiction over *any* action brought under the City Agreements. *See* PMO Opp. at 11. Plaintiffs readily concede that Schedule 6 does not fix venue in state court or prohibit a party from instituting an action in federal court. Rather, Plaintiffs assert that the forum objection waiver contained in Schedule 6 precludes PMO from objecting to the City's forum choice. The language of Schedule 6 makes plain that neither party "shall object to the institution or maintenance of any such action, suit or proceeding *in such court*. . . ." Murphy Decl. Ex. 2 (emphasis added). The City chose its forum and PMO waived its right to object to that forum choice.

PMO mistakenly relies upon this Court's decision in *United States Steel Corp. v. Turner Constr. Co.*, 560 F. Supp. 871 (S.D.N.Y. 1983) for the proposition that Schedule 6 is "wholly inappropriate and without force." PMO Opp. at 6. In *Turner,* the Court declined to incorporate a forum selection clause found in a contract between a real property owner and a general contractor into a construction subcontract. As the Second Circuit noted, the decision in *Turner* was based "on a New York rule of law that applies to construction subcontracts and has no bearing on [other types of contracts]." *Proyecfin de Venezuela, S.A. v. Banco Indus. de Venezuela, S.A.*, 760 F.2d 390, 395, n.5 (2d Cir. 1985). The City Agreements are not construction subcontracts and, here, Plaintiffs do not seek to incorporate the terms of a general contract into any subcontract.

Schedule 6 is a forum selection clause under which the party bringing the action selects the forum. Absent circumstances that would render a forum selection clause unreasonable, a

forum selection clause must be enforced. *Eklecco L.L.C. v. Rainforest Cafe, Inc.*, No. 02-CV-0182, 2002 U.S. Dist. LEXIS 11484 at *7 (N.D.N.Y. June 12, 2002). PMO's attempt to distinguish *Eklecco* on the grounds that Schedule 6 does not fix venue in a specific court is unavailing. While the forum choice language of Schedule 6 does not restrict venue to state court, it unambiguously precludes any objection whatsoever to the aggrieved party's forum choice.[2] By agreeing to the terms of Schedule 6, PMO explicitly waived its right to object to Plaintiffs' forum choice and Plaintiffs respectfully request that this Court enforce that waiver.

## II.    THIS COURT LACKS FEDERAL QUESTION JURISDICTION

To find that federal question jurisdiction exists here, the Court is required to determine that it must necessarily resolve a substantial question of federal law. *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 25 (2d Cir. 2000). This Petition will be resolved under state contract law and public policy and, therefore, federal question jurisdiction does not arise here.

Federal question jurisdiction exists only where a federal question is presented on the face of a plaintiff's properly pleaded complaint. *Caterpillar, Inc. v. Willams*, 482 U.S. 386, 392 (1987). Thus, here, it is the Petition that governs whether a federal question exists, not the underlying Arbitration Proceeding. As PMO concedes, federal question jurisdiction exists only where Plaintiffs' right to relief necessarily depends on resolution of a substantial question of federal law. *Greenberg*, 220 F.3d at 25 (2d Cir. 2000); PMO Opp. at 18.

PMO argues that Plaintiffs' Fifth Claim for Relief, which seeks to stay arbitration of PMO's allegations constitutional violations, creates a federal question. However, that claim is based on the scope of the arbitration provision and New York public policy. It does not seek an

---

[2] PMO's argument that Schedule 6 states a "term of mere geography rather than a term of sovereignty" is similarly unconvincing. Again, Plaintiffs never argued that Schedule 6 is a venue provision that fixes venue in state court.

adjudication of the merits of PMO's constitutional claims. If the Petition is granted, PMO will be free to pursue those claims in court. Resolution of this claim for relief does not require a court to resolve a substantial federal question. Instead, it requires an interpretation of state contract law and state public policy.

PMO erroneously relies on *Greenberg* for the proposition that the Petition raises issues of federal law. In *Greenberg*, the court found federal question jurisdiction existed where a petition to vacate an arbitration award had alleged that the award was in manifest disregard of federal law. Here, unlike *Greenberg*, Plaintiffs seek a stay of arbitration based on the scope of the arbitration provision and state public policy, not vacature of a damages award that violates federal law. The issues of contract law raised in Plaintiffs' Petition do not touch upon any issues of federal law.

Even assuming the Petition did require a court to touch on federal law in order to resolve the contract-based claims raised in the Petition, removal based on federal question jurisdiction still requires that a federal issue be substantial. In *Barbara v. New York Stock Exch.*, 99 F.3d 49 (2d Cir. 1996), the court explained that "a federal issue in a state cause of action does not automatically confer federal-question jurisdiction" and held that federal questions arising out of a complaint alleging state law contract claims were not substantial enough to establish federal jurisdiction. (quoting *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 813 (1986)).[3]

Confusingly, PMO relies on *Tripp v. Renaissance Advantage Charter Sch.*, No. 02-9366, 2003 U.S. Dist. LEXIS 19834 (E.D. Pa. Oct. 8, 2003), for its argument that the Petition raises a

---

[3] The court in *Barbara* ultimately retained jurisdiction over the case because the plaintiff had voluntarily amended the complaint to expressly allege federal claims. Here, Plaintiffs raise only state law claims, the resolution of which does not require a court to decide issues of federal law.

substantial federal claim sufficient to invoke removal jurisdiction. *Tripp* did not involve the removal of an action from state to federal court, nor did it address federal question jurisdiction. Rather, in that case, the court held that an individual could not be compelled to arbitrate her first amendment claims brought under 42 U.S.C. § 1983. The court in *Tripp* made no determination whatsoever concerning federal jurisdiction. *Tripp* has no application to this case.

Nothing in the Petition requires this Court to resolve a substantial question of federal law. Plaintiffs' New York claims sound in state contract law and public policy, not federal law. Plaintiffs' claims will therefore be resolved based on state law principles of contract interpretation. Consequently, this Court lacks jurisdiction and the case should be remanded to state court.

## III.    THIS COURT LACKS DIVERSITY JURISDICTION

Under well-established Second Circuit precedent, the amount in controversy in this action is determined under the "plaintiff's viewpoint rule." *See Kheel v. Port of N.Y. Auth.*, 457 F.2d 46, 48-49 (2d Cir. 1972). PMO misleads the Court and misstates the law of this Circuit by urging it to adopt the "defendant's viewpoint" or "either party viewpoint" rules followed by the Seventh and Tenth Circuits. *See* PMO Opp. at 14-15; *see also* MOORE'S FEDERAL PRACTICE 3d § 107.14[2][g][vii] (collecting cases and noting circuit split).[4] This Court should reject PMO's transparent attempt to evade the law of this Circuit. The amount in controversy here must be considered from Plaintiffs' viewpoint.

---

[4] *Compare Kheel, supra; Garcia v. Koch Oil Co. of Tex., Inc.*, 351 F.3d 636, 640 n. 4 (5th Cir. 2003) (applying the "plaintiff's viewpoint" rule); *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Elecs., Inc.*, 120 F.3d 216, 219-20 (11th Cir.1997) (same); *Massachusetts State Pharm. Ass'n v. Fed. Prescription Serv.*, Inc., 431 F.2d 130, 132 n. 1 (8th Cir.1970) (same); *with In re Ford Motor Co./Citibank*, 264 F.3d 952, 958 (9th Cir.2001) (applying the "either viewpoint rule"); *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 609 (7th Cir.1997) (same); *Oklahoma Retail Grocers Ass'n v. Wal-Mart Stores*, Inc., 605 F.2d 1155, 1159 (10th Cir.1979) (same).

It is well-established that courts in the Second Circuit follow the plaintiff's viewpoint rule to determine the value of equitable relief. As one court noted, "the Second Circuit has rejected the contention that the Court can consider the relief sought from the perspective of either party or the party seeking jurisdiction when determining whether the amount in controversy requirement has been satisfied. In fact, the Second Circuit follows the majority of courts and looks to the relief sought from the plaintiff's viewpoint." *McGowan v. Cadbury Schweppes, PLC*, 941 F. Supp. 344, 346 (S.D.N.Y. 1996) (citing *Law Audit Services Inc. v. Studebaker Technology, Inc.*, No. 96-civ-0926, 1996 U.S. Dist. LEXIS 3621, at *4 (S.D.N.Y. Mar. 27, 1996); *Leslie v. Banctec Service Corp.*, 928 F. Supp. 341, 348 n.11 (S.D.N.Y. 1996) and *Cowan v. Windeyer*, 795 F. Supp. 535, 536-39 (N.D.N.Y. 1992) (amount in controversy for jurisdictional purposes is measured strictly from plaintiff's perspective)). Moreover, Courts in the Southern District of New York and in other jurisdictions that follow the plaintiff's viewpoint rule have held that a petition seeking declaratory relief only, including a stay of arbitration, does not meet the amount in controversy required to establish federal jurisdiction. *See, e.g., Paduano & Weintraub LLP v. Wachovia Secs.*, 185 F. Supp. 2d 330, 333 (S.D.N.Y. 2002) (declaratory relief);[5] *Staffing Concepts Int'l, Inc. v. CNA Claimplus, Inc.*, No. 8:06-cv-2031-T-23TBM, 2007 U.S. Dist. LEXIS 18637, *4-*5 (M.D. Fla. March 16, 2007) (stay of arbitration).

The cases relied upon by PMO are readily distinguishable because they all involve petitions to *compel* arbitration. *See* PMO Opp. at 14. As the Second Circuit has noted, in a petition to compel arbitration, courts applying the plaintiff's viewpoint look to the potential

---

[5] PMO's fails to meaningfully distinguish *Paduano, supra*. The fact that the plaintiff in that case was not a party to the underlying arbitration is irrelevant to application of the plaintiff's viewpoint rule. Applying the plaintiff's viewpoint rule, the court in *Paduano* explained that it was inappropriate to look to the value of the underlying arbitration in a removed action for declaratory relief. Like the petition in *Paduano*, the Petition here seeks only declaratory relief. Accordingly, this Court should not look to the underlying arbitration to determine the amount in controversy.

arbitration award because "the petition to compel arbitration is the initial step in the litigation, which seeks as its goal a final judgment approving the award." *Doctor's Assocs. v. Hamilton*, 150 F.3d 157, 160 (2d Cir. 1998) (citing *Davenport v. Proctor & Gamble Mfg. Co.*, 241 F.2d 511, 514 (2d Cir. 1957)). Here, unlike the cases cited by PMO, Plaintiffs seek to stay non-arbitrable claims, which PMO remains free to pursue in the court of its choosing. The value of a stay, which preserves the right to judicial access and appeal, cannot be measured by the same stick as an order compelling arbitration because a stay of arbitration, unlike an order compelling arbitration, does not have the goal of compelling the parties to submit to an arbitration and, ultimately, a court order affirming a monetary award. *See Staffing Concepts*, 2007 U.S. Dist. LEXIS 18637, *4-*5.

"Where as here, jurisdictional facts are challenged, the party asserting jurisdiction must support those facts with competent proof and justify [its] allegations by a preponderance of the evidence." *United Food & Commercial Workers Union, Local 919 v. Centermark Properties Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994) (quotation marks omitted). PMO has failed to meet that burden here and this case should be remanded to state court. The ample precedent applying the plaintiff's viewpoint rule leaves no doubt that the amount in controversy in the underlying arbitration should not serve as a measure of the monetary value of the controversy here. From Plaintiffs' viewpoint, the amount in controversy is nil and the case should be remanded for lack of subject matter jurisdiction.

## IV. PMO FAILED TO CURE THE DEFECTIVE PASCAL DECLARATION

PMO's half-hearted attempt to cure its admittedly defective declaration by putting it into a memorandum of law and attaching it to another declaration is absurd. More to the point, PMO fails to address the fact that the Pascal Declaration seeks a dismissal of the Petition without providing notice and a return date for the relief sought, as required by Southern District of New

York Local Rule 6.1. A motion to dismiss in this Court is properly brought on notice pursuant to Fed. R. Civ. P. 12. PMO's request that this Court consider dismissing the Petition based on either the Pascal Declaration or a memorandum of law attached as an exhibit to another declaration is a misguided attempt to preclude Plaintiffs from responding to PMO's motion to dismiss. PMO argues that it was ordered by the state court to submit a response to the Petition. Of course, PMO could have complied with that court's direction and filed an opposition in state court. It chose instead to remove this case to federal court. PMO must now lie in the bed that it made and abide by the rules of federal practice. Those rules require that a motion to dismiss be made on notice. PMO has not complied with those rules, and its attempt to circumvent them to gain a procedural advantage should fail.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully requests that the Court: (1) remand the Petition to New York Supreme Court, Orange County; (2) in the event remand is not ordered, strike the Pascale Declaration; and (3) grant such other and further relief as the Court deems necessary and proper.

Dated: New York, New York
September 21, 2007

                                        Respectfully submitted,
                                        BEVERIDGE & DIAMOND, P.C.

By: _____
     Christopher J. McKenzie, Esq. (CM 2615)
     Michael G. Murphy, Esq. (MM 5472)
     Zackary D. Knaub, Esq. (ZK 7830)
477 Madison Avenue, 15th Floor
New York, NY 10022-5802
Tel.: (212) 702-5400
Fax: (212) 702-5450

Attorneys for Plaintiffs.

Of Counsel:    Alex Smith, Esq. (AS 5052)
               Office of the Corporation Counsel
               City of Middletown
               16 James Street
               Middletown, New York 10940
               (845) 346-4140

- 11 -